IN THE MATTER OF THE COMPLAINTS AND APPEALS OF ERIE RAILROAD SYSTEM, CITY OF HOBOKEN AND TOWNSHIP OF WEEHAWKEN FROM VARIOUS ASSESSMENTS LEVIED BY THE DIRECTOR OF THE DIVISION OF TAXATION FOR THE YEARS 1950 TO 1953, INCLUSIVE, ON CLASS II LANDS OWNED BY ERIE RAILROAD SYSTEM AND LOCATED IN THE CITY OF HOBOKEN AND THE TOWNSHIP OF WEEHAWKEN.

ERIE RAILROAD COMPANY, A CORPORATION, PLAINTIFF-APPELLANT, v. CITY OF HOBOKEN AND TOWNSHIP OF WEEHAWKEN, MUNICIPAL CORPORATIONS, AND DIRECTOR, DIVISION OF TAXATION AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENTS-RESPONDENTS (FOUR APPEALS).

CITY OF HOBOKEN, A MUNICIPAL CORPORATION, PLAINTIFF-RESPONDENT, v. ERIE RAILROAD COMPANY, A CORPORATION, RESPONDENT-APPELLANT, AND DIRECTOR, DIVISION OF TAXATION AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENTS (THREE APPEALS).

TOWNSHIP OF WEEHAWKEN, A MUNICIPAL CORPORATION, PLAINTIFF-RESPONDENT, v. ERIE RAILROAD COMPANY, A CORPORATION, RESPONDENT-APPELLANT, AND DIRECTOR, DIVISION OF TAXATION AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENTS.

TOWNSHIP OF WEEHAWKEN, A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT, v. ERIE RAILROAD COMPANY, A CORPORATION, AND DIRECTOR, DIVISION OF TAXATION AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, RESPONDENTS-RESPONDENTS.

Argued May 23, 1955—Decided June 20, 1955.

116

*Mr. Raymond J. Lamb* argued the consolidated causes for the Erie Railroad Company (*Messrs. Emory, Langan & Lamb,* attorneys).

*Mr. James Rosen* argued the consolidated causes for the City of Hoboken and the Township of Weehawken (*Messrs. Milmed & Rosen,* attorneys for Township of Weehawken, *Mr. Herbert H. Fine,* attorney for City of Hoboken).

The opinion of the court was delivered by

BURLING, J. These consolidated appeals from the Division of Tax Appeals in the Department of the Treasury, State of New Jersey (hereinafter called the Division) involve assessments of lands classified in the category of Class II railroad property. See *N. J. S. A.* 54:29A–17. The assessments on Class II buildings and other improvements are not involved herein. One of the appeals was taken by the Township of Weehawken (hereinafter called Weehawken), a municipal corporation of New Jersey, from a Division judgment of dismissal of Weehawken's appeal of a 1953 assessment (A–154 September term 1954). The balance of the appeals were taken by the Erie Railroad Company (hereinafter called Erie), a corporation of the State of New York, using properties in New Jersey for railroad purposes, and relate to judgments of the Division which sustained or increased certain 1950, 1951, 1952 and 1953 assessments of Class II lands of Erie, situate within the territorial limits of the City of Hoboken, New Jersey (hereinafter called Hoboken) and Weehawken. (A–153 September term 1954).

The several appeals above adverted to, addressed to and consolidated by the Superior Court, Appellate Division, were certified by this court on its own motion prior to hearing there.

There are three principal parcels of Class II railroad land involved in these appeals. All of these parcels may be gen-

erally characterized as Hudson River waterfront terminal lands. One was cursorily described in Erie's complaint filed with the Division as second-class Erie Railroad property in the City of Hoboken consisting of 1.862 acres of land "outside main stem, excess in southeast portion of Terminal Tract triangle extending from Weehawken Township to exterior line for piers." These lands were assessed by the Director, Division of Taxation (hereinafter called the Director) for each of the tax years 1950, 1951, 1952 and 1953 at $75,410. This parcel will be referred to herein as parcel No. 3. The other two parcels, designated throughout the tax appeal proceedings as parcels Nos. 1 and 2, lie in Weehawken. Weehawken parcel No. 1 was described in Erie's complaint filed with the Division as 69.847 acres of land "outside main stem, excess from east side of main stem of N. J. Junction R. R. to exterior line for piers," and was assessed by the Director for each of the tax years 1950, 1951, 1952 and 1953 at $2,828,803. Weehawken parcel No. 2, in respect to tax years 1950, 1951 and 1952, was described by Erie in its complaint as 9.642 acres of land "outside main stem, excess west of main stem of N. J. Junction R. R.," and was assessed by the Director for each of those tax years at $260,334. Weehawken parcel No. 2 was subjected to reclassification for the 1953 tax year, 2.032 acres being withdrawn from the Class II railroad property classification and assessed by local authorities as general lands. Therefore the Director's assessment for the tax year 1953 as to Weehawken parcel No. 2, namely $205,470, related to 7.610 acres of land "outside main stem, excess west of main stem of N. J. Junction R. R."

Erie appealed the assessments on all three parcels, for each of the four tax years, 1950, 1951, 1952 and 1953. Erie sought reduction of assessments, on Weehawken parcel No. 1, to $2,095,410 for each tax year; on Weehawken Parcel No. 2 to $188,983 for tax years 1950, 1951 and 1952, and (on the reduced acreage hereinbefore mentioned) to $149,900 for tax year 1953; and on parcel No. 3 (Hoboken) to $55,860.

Hoboken appealed the assessments on parcel No. 3 for tax years 1951, 1952 and 1953, contending that the parcel's true value for each of those tax years was $121,600.

Weehawken appealed the assessments on parcels No. 1 and No. 2 for tax years 1952 and 1953, contending that for tax years 1952 and 1953 the true value of parcel No. 1 was $3,841,585; for tax year 1952 the true value of parcel No. 2 was $289,260; and for tax year 1953, the true value of parcel No. 2 as reduced in size was $239,260.

The Erie, Hoboken and Weehawken appeals hereinbefore adverted to were consolidated for hearing in the Division of Tax Appeals. The taking of testimony commenced October 20, 1953, before Commissioners Hull, DeVoe and Weiner, who constituted the "railroad panel" of the Division of Tax Appeals, before whom all pending railroad tax appeals had been listed for hearing. The hearings encompassed 20 days, spread over a period of months terminating April 12, 1954. A report for the panel was prepared by Commissioner Hull, dated August 6, 1954. Commissioner Hull's written report contained detailed discussion of the appeals and evidence, expressed findings of fact and conclusions of law, and recommended judgments based thereon. The Division of Tax Appeals, on August 27, 1954, stating "the members of the Division of Tax Appeals having considered the evidence submitted by the parties," entered separate judgments in each of these tax appeals. The Division's docket entries demonstrate that Commissioner Hull's report "was unanimously approved and judgment was ordered entered accordingly."

The Division, in its judgments, dismissed Erie's appeals for all four tax years (1950-1953, inclusive); dismissed Weehawken's 1953 appeal on adjective grounds; granted Hoboken appeals as to tax years 1951, 1952 and 1953, establishing the assessment for each tax year at $83,790; granted Weehawken's appeal for the tax year 1952, setting the assessments for that year at $3,143,115 as to Weehawken parcel No. 1, and at $289,260 as to Weehawken parcel No. 2. Erie

appealed from the Division's judgments dismissing its tax appeals, and from the Division's judgments allowing increases in assessments on Hoboken's and Weehawken's appeals. Weehawken appealed from the Division's judgment dismissing its 1953 appeal. All these appeals were addressed to the Superior Court, Appellate Division, and were consolidated for hearing by order of that court made with the consent of all parties to the appeals and filed November 3, 1954. As hereinbefore noted, we certified the consolidated appeals for argument and disposition in this court. The arguments and briefs of Erie, Hoboken and Weehawken have been presented to us in two phases: Erie's appeals, A–153 September term 1954, and Weehawken's appeal, A–154 September term 1954. In the disposition of the consolidated appeals this sequence will be maintained. It is noted in passing that the respondents Director, Division of Taxation, and Division of Tax Appeals have filed a statement signifying their determination to file no briefs in these matters.

Erie's Appeals (A–153).

The questions involved in Erie's appeals include: (a) whether there were procedural defects requiring reversal, in connection with the course of determination pursued by the Division; (b) whether the Division adjectively made adequate findings of facts and determinations; (c) whether the Division erred in relation to matters of evidence, including, *inter alia*, resort to "trends" of increase in property values; (d) whether the Division must affirm an assessment in absence of substantial evidence of error therein; (e) whether the determinations made by the Division are supported by the evidence. In addition, on these appeals, Hoboken and Weehawken question the validity of an order made by the Superior Court, Appellate Division, on December 1, 1954, extending Erie's time for perfection of its course of appeal.

## I. Adjective Course of Determination.

The initial questions involved presented by Erie on these appeals broach three adjective issues: whether there should be a reversal of the judgments of the Division for failure of all three members of the railroad panel to sign their report, whether the panel report was invalid because it included recommendations, and whether the approval of the report submitted by Commissioner Hull constituted adoption thereof by the Division.

Erie accepts as valid the mechanics of the Division's assignment of these appeals to, and of hearing by, the railroad panel. The questions involved are devoid of any direct or implied attack thereon, and if there is any deficiency in that respect it must be deemed waived. *Cf. R. R.* 1:7–1(*c*). The portions of the record reproduced by Erie in the appendix to its brief, see *R. R.* 1:7–1(*f*), as necessary to a determination herein do not disclose any patent error in this respect.

The questions involved as presented by Erie hinge on construction and application of pertinent provisions of the applicable statute of this State.

The statute provides that a majority of the Division shall constitute a quorum and a vacancy "shall not impair the powers nor affect the duties of the board or of the remaining members." *R. S.* 54:2–10. The Division may "make such reasonable orders upon the final determination of * * * appeals as will effectuate the final determination thereof according to law. *Such determination shall be evidenced by a judgment signed by at least four members,* and filed with its secretary * * *." *R. S.* 54:2–14, as am. *L.* 1946, *c.* 161, *sec.* 3. (Emphasis supplied)

The statute further provides as follows:

*R. S.* 54:2–16, as am. *L.* 1941, *c.* 143, *sec.* 1:

"Hearings before the board shall be open to the public and its proceedings shall be conducted in accordance with such rules of evidence and procedure as the board from time to time may prescribe.

*The board shall reduce to writing its findings of fact and its decision in each case. These findings and decisions shall be entered of record* and a copy furnished to the appellant and the State Tax Department. All findings, decisions and reasons therefor of the board including the transcript of testimony, if any, shall be public records and open to the inspection of the public." (Emphasis supplied)

*R. S.* 54:2–18, as am. *L.* 1941, *c.* 143, *sec.* 2; *L.* 1946, *c.* 161, *sec.* 4:

"The Division of Tax Appeals in the State Department of Taxation and Finance may, as occasion shall require, by order, refer to two or more of its members, at least one of whom shall be an attorney-at-law, the duty of taking testimony in a matter pending before it, *and to report on such matter and the testimony so taken, to the division, but no determination shall be made therein except by the division. Said reports shall be in writing and signed by the members, and shall include, in substance, the facts and particulars of the testimony so taken,* which written reports shall be public records and open to the inspection of the public. Stenographic notes shall be made of all testimony so taken, but *the members of the board shall be qualified to make their determination after receiving the report of the members hearing the testimony,* and without the necessity that the stenographic notes so taken shall have been reduced to writing; *provided, however,* that *the testimony shall be reduced to writing at the request of any member of the division required to make a determination in any such matter."* (Emphasis supplied)

Erie asserts no error in the judgments of the Division as such. The judgments in each matter stated the ultimate determination made by the Division and were signed by five members of the Division. On their face the respective judgments appear to be strictly in conformity with *R. S.* 54:2–14, as amended, *supra.*

 Erie contends that initial error obtains in the element of the making of recommended findings of fact and determinations in Commissioner Hull's report. Erie's argument is that the statute expressly forbids such a practice in the phrase "no determination shall be made therein except by the division." *R. S.* 54:2–18, as amended, *supra.* We find no merit in this argument. The clear sense of this statutory provision as an entirety is to permit the report of the panel

members to contain recommendations of findings of fact and conclusions (*i. e.*, proposed determinations to be acted upon by the Division). The absence of these elements contributed to reversal in a similar case, *Delaware, L. & W. R. Co. v. City of Hoboken*, 10 *N. J.* 418, 427 (1952). And the specific language "no determination shall be made *therein* except by the division" (emphasis supplied) obviously refers to the phrase "matter pending" before the Division, and not to the report of the panel. It does not bar recommendations by the panel, and the statutory provision *R. S.* 54:2–18, as amended, *supra,* expressly requires the report to "include, in substance, the facts and particulars of the testimony * * *."

■■ The further contention is advanced by Erie that the panel report was invalid in that it was not signed by all members of the panel. We do not condone the omission but the error under the circumstances of this case is not demonstrably prejudicial to any party to the appeals. The report could be made by a majority of the panel since the duties of Division members are not impaired by a vacancy. *R. S.* 54:2–10, *supra.* No arbitrary refusal to sign the report by one or the other of Commissioner Hull's confreres on the panel is suggested either in the arguments presented to this court or in the record. No disagreement is indicated and Commissioner Weiner, a panel member, participated in the determination (as did Commissioner Hull, who wrote the report) made by the Division and signed the respective judgments, signifying thereby his agreement therewith.

■ Examination of the record suggests that during the 20 days of hearings before the panel, Commissioner Hull was absent on one day, Commissioner Weiner was absent on one day and Commissioner DeVoe was absent on more than one day. On each day of the hearings the statutory panel minimum was present, namely two commissioners, one of whom was an attorney. *R. S.* 54:2–18, as amended, *supra.* The essential purpose of resort to hearers under this statute is to facilitate the compilation of a record under *quasi*-judicial guidance, and their report as such hearers is not a decision.

*Ibid.* The record compiled is reviewed by the Division. Such procedure does not constitute a denial of due process. *Mazza v. Cavicchia,* 15 *N. J.* 498, 504 (1954). No error or prejudice is charged by Erie in these respects and none is apparent under the circumstances of the matters involved on these appeals. Under the circumstances of this case, therefore, no reversal will be effected on this basis. However, as a *caveat* we reiterate and stress our conclusion, stated by Mr. Justice Brennan, in *City of Passaic v. Passaic County Bd. of Taxation,* 18 *N. J.* 371, 397 (1955), concerning *R. S.* 54:2–18, as amended, *supra,* that:

"We think the sense of this provision is that the members assigned to conduct a proceeding and who report to the full Division must hear the proceedings throughout. * * *"

Erie also contends that the Division did not adopt the panel report and therefore made no written findings of fact and decision. See *R. S.* 54:2–16, as amended, *supra.* We find no merit in this contention. Commissioner Hull did not acquire a lesser status as a panel member but remained a member of the Division. His report was no less subject to adoption by the whole Division than was Commissioner DeVoe's report in *Atlantic City Transportation Co. v. Director,* 12 *N. J.* 130, 140–141 (1953). The panel members are commissioners, not subordinate employees, and the panel report is expressly declared by statute to be a public record. It is not secret, and Erie has asserted no right of access thereto or notice thereof prior to consideration of the appeals on the merits by the Division. Compare *Mazza v. Cavicchia, supra,* 15 *N. J.,* at *page* 514. Further the judgments of the Division expressly state "the members of the Division of Tax Appeals having considered the evidence submitted by the parties," or the "Division of Tax Appeals having considered the evidence submitted by the parties," signifying resort to the record of testimony and other evidence by the Division members who signed the judgments. See *R. S.* 54:2–18, as amended, *supra.* Erie does not contend to the contrary.

Erie's argument is that the record states that the Division merely "approved" Commissioner Hull's report, and reversal is required because there was no "adoption" thereof. The strict lexicographic definitions of "approve" include the sense of ratification, or official sanction. *Webster's New International Dictionary* (*2d ed.* 1947), *p.* 133. We are not here confronted with a statutory expression of the word "approve" but with the discernment of the intent of the *use* thereof by the Division. In the sense used there is no doubt that the Division by approval or ratification under the circumstances of this case intended and consummated adoption in fact, and we so hold. *Cf. Miller v. Union County,* 48 *Or.* 266, 86 *P.* 3 (*Sup. Ct.* 1906); *City of Dallas v. Beeman,* 18 *Tex. Civ. App.* 335, 45 *S. W.* 626, 628 (*Civ. App.* 1898). Compare *Leopold v. Civil Service Commission,* 126 *N. J. L.* 613, 615 (*Sup. Ct.* 1941).

## II. ADJECTIVE SUFFICIENCY OF THE FINDINGS OF FACT.

Erie included in its questions involved on these appeals the question whether the Division's adoption of Commissioner Hull's report was invalidated by the use of the term "suggested" therein. The findings of fact expressed in the report were not individually so characterized. As a preliminary measure the report contained the phrase: "Now, mindful of our duty to propose factual findings from the evidence and to recommend judgments founded thereon, we suggest the following:". This phrase demonstrates only that the panel recognized the statutory mandate that the Division, and not the panel, make the ultimate determination in the matters under consideration. The word "suggest" was clearly used in the sense of recommendation. Upon consideration of all the evidence submitted by the parties, and adoption of the report, by the Division the term lost its significance and became superfluous. Literary perfection is a requisite of neither the statute nor the decisions of this

court, by virtue of which the requirements for written findings of fact and determinations exist.

Erie further contended that the expression of findings of fact was inadequate. In support of this contention Erie asserted that the crux of Commissioner Hull's lengthy and detailed report was contained in two paragraphs. This argument takes these paragraphs out of context and ignores many additional instances in which express basic and ultimate findings were made. Adjectively there is no merit in Erie's charge of inadequacy of the expression of findings. The sufficiency of the findings in fact or on the law is considered by us on the merits of these appeals. It is required only that the findings of fact "be sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order." *New Jersey Bell Telephone Co. v. Communications Workers, etc.*, 5 *N. J.* 354, 377 (1950).

### III. Evidence.

There are three questions involved on these appeals, advanced by Erie, in relation to admissibility of evidence. These questions involved are: (a) whether the Division may resort to "trends" of property value increase; (b) whether the Division may advert to a "Consumers' Price Index"; and (c) whether a real estate expert in formulating his opinion may rely on sales made within a reasonable time after the assessment date in issue.

*A. Trends and Price Indices*:

Erie contends that the Division erroneously considered an "upward trend" in value of Hudson River waterfront realty between 1940 and the assessment dates. The arguments advanced by Erie stress the weight of evidence, but also include the assertion that evidence of "trends" is *per se* inadmissible.

In *City of Newark v. West Milford Tp., Passaic County,*
9 *N. J.* 295, 307 (1952), this court held that neither a
temporary general inflation nor a temporary general depression condition was "in itself" a sufficient reason for increase or decrease in assessed valuation of property. And we
have held that resort to price indices by the means of application of a "translator" of dollar value to original cost is an
improper method of valuation. *In re New Jersey Power &
Light Co.,* 9 *N. J.* 498, 514–515 (1952). However, in the
*New Jersey Power & Light Co.* case, *ubi supra,* we adopted
language of the United States Supreme Court, expressed in
*West v. Chesapeake & Potomac Telephone Co.,* 295 *U. S.* 662,
671, 672, 55 *S. Ct.* 894, 898, 79 *L. Ed.* 1640, 1647 (1935),
which included the following:

"'* * * This is not to suggest that price trends are to be disregarded; *quite the contrary is true. And evidence of such trends
is to be considered with all other relevant factors.* * * *'"
(Emphasis supplied)

Further, in *New Jersey Bell Telephone Co. v. Communications Workers, etc., supra* (5 *N. J.*, at *page* 373), it was held:

"The Company criticises the Board's consideration of 'trends' as
a basis for the wage award. We agree that 'trends' do not constitute proper items to be considered in arriving at 'a just and reasonable determination' of a labor dispute. The objective of the proceedings provided for in the statute is to consider, by an application
of the standards delineated therein to the evidence, the justness and
reasonableness of the wages, in the particular labor dispute, existing
at the time of the dispute and to make a determination accordingly.
The employment of 'trends' in the attainment of the objective is considered improper because 'trends' are illusory. A 'trend' is defined
in *Webster's New International Dictionary* (2d ed. 1947), as the
'general direction taken by something changing or subject to change.'
A 'trend' may change its direction at any time. *If it progresses in
one direction for a sufficient length of time it becomes more than a
'trend'; it becomes an established thing which would be reflected in
the existing conditions* disclosed by the application of the standards
specified in the statute, particularly standards Nos. 2 and 3. To
predicate a determination of what is just and reasonable, at the
time a labor dispute is being resolved, upon something which has

not as yet become established but which, if established at some future time might possibly change existing conditions, either one way or the other, would be manifestly unfair to both parties involved in the dispute."

No translator factor was resorted to in Commissioner Hull's report. The evidence of trends in property values, including the Consumers' Price Indices, under the circumstances of this case was admissible and consideration thereof by the Division in reaching its determination was proper. *Cf. Hackensack Water Co. v. Division of Tax Appeals*, 2 *N. J.* 157, 163 (1949); *L. Bamberger & Co. v. Division of Tax Appeals*, 1 *N. J.* 151, 156–157 (1948).

Price trends may not be used exclusively as an indication of present value, as by translation of a previous valuation by use of dollar equivalents or as the *sole* basis for an opinion. *Cf.* 43 *Am. Jur., Public Utilities and Services, sec.* 115, *p.* 653. The use of trends is collateral and corroborative only, since the principal inquiry as to value is local, that is, similarity of other lands and sales prices thereof under the conditions surrounding the sales, and the element of remoteness of such evidential sales in respect to locale, are vital elements of tax assessment. *Cf.* 3 *Wigmore on Evidence* (*3rd ed.* 1940), *secs.* 718, 719, *pp.* 51–54; 51 *Am. Jur., Taxation, sec.* 727, *p.* 669. It has been said that assessors "* * * should recognize that the true value of a fixed asset, such as real estate, is fairly constant and must be gauged by conditions, not temporary and extraordinary, but by those which over a period of time will be regarded as measurably stable." *Alfred J. Sweet v. City of Auburn*, 134 *Me.* 28, 180 *A.* 803, 804, 104 *A. L. R.* 784, 787, 789 (*Sup. Jud. Ct.* 1935). *Cf. Jones on Evidence* (1938), *sec.* 168, *pp.* 292–296. Relevant price-current lists and market reports which are recognized for trustworthiness by commercial trade experience are admissible, but must be closely scrutinized to determine the weight to be accorded them. 6 *Wigmore on Evidence* (*3rd ed.* 1940), *secs.* 1702, 1704, *pp.* 22–23, 26–29. See also *Nat'l. Conf. of Com'rs. on Uniform State Laws, Uniform Rules of Evidence* (1953), *Rule* 63(30), *p.* 210;

*American Law Institute, Model Code of Evidence* (1942), *Rule 528, pp.* 293–294.

B. *Post-Assessment Sales.*

Erie contends that the Division erred in stating as follows:

"* * * since January 1, 1952 was the last assessing date here involved, any sales subsequent to that date could properly have been used by the experts only in corroboration of an opinion of value already established. Because of the stipulation between the parties to accept and use the same value as of the four assessing dates here involved, there is no need to make the same point in respect to sales between January 1, 1949 and January 1, 1952."

The quoted portion of the Division findings (Commissioner Hull's report) must be read in the light of the whole expression. The report expressly stated with reference to the sales resorted to as evidential:

"* * * In point of time *these sales range from* 1938 *to* 1953, *a latitude we believe to be proper* in railroad cases, where a relative scarcity and background of comparable sales exists * * *." (Emphasis supplied)

The Division, *i. e.,* the railroad panel, permitted introduction of evidence relative to sales subsequent to the assessing dates and resorted thereto in arriving at its findings of fact and determination. In this respect the state of the record is comparable to the record disclosed in *Tennant v. Jersey City,* 122 *N. J. L.* 174, 175–176 *(Sup. Ct.* 1939), affirmed 123 *N. J. L.* 200 *(E. & A.* 1939).

 We decline to rule whether an expert may formulate his opinion as to true value of property on an assessment date by reference solely to subsequent sales. No such opinion was advanced by the experts who testified in this case. To that extent all the evidence offered and received was reasonably related to the assessment dates in these matters under the Division's ruling and as well under the *Tennant* case, *supra.* Therefore, even if there was error in the expression

of the permissible scope of evidence, it was not prejudicial here. It caused neither unwarranted exclusion of evidence nor erroneous consideration thereof.

## IV. PRESUMPTIONS.

Erie's seventh question involved in these appeals is whether the Division is obliged to affirm an assessment made by the Director, Division of Taxation, in the absence of substantial evidence that said assessment is erroneous.

The duty of the Division is not so severely limited. The question was dispositively settled by this court in *Delaware, L. & W. R. Co. v. City of Hoboken, supra* (10 *N. J.*, at *page* 431), wherein Mr. Justice Brennan stated:

"* * * the legislature has explicitly provided, *N. J. S. A.* 54:29A–33, that the Division of Tax Appeals 'shall correct, adjust * * *' 'such assessment' by the Director 'If it shall be made to appear' after hearing upon complaint and notice, *N. J. S. A.* 54:29A–31 and 32, from evidence, that 'any such assessment' is 'excessive' or 'insufficient,' the Division's 'findings of fact and its decision in each case' in that regard to be reduced to 'writing,' *R. S.* 54:2–16. The Division is thus clothed with power independently to make an assessment when from evidence it appears that the Director has made an improper one."

## V. THE FACTUAL DETERMINATION.

The remaining questions involved advanced by Erie relate to the adequacy and validity of the Division's findings of fact and determinations.

It is observed that all of the appeals involved herein were consolidated by consent of the parties for hearing in the Division of Tax Appeals and before the railroad panel. It was also stipulated at the initial hearing before the panel that the evidence would be presented together for all these matters, and would "be the same throughout" except that Weehawken contemplated proving a change in value for the 1953 tax year as to parcel No. 2. It is on this stipulated premise that the Division's findings were rendered, and our determination likewise is controlled thereby.

There were four principal expert witnesses. Messrs. William J. Stack and Arthur C. Guterl testified for Erie; Mr. William Robertson, Jr., testified for Hoboken; and Mr. Joseph Rubenstein testified for Weehawken. In addition Erie called five other witnesses and the Director, Division of Taxation, called to testify Mr. Henry L. Fryer, a Division of Taxation appraiser (Chief Engineer and State Supervisor, Engineering and Railroad Tax Bureau, Department of the Treasury) and Mr. Aaron K. Neeld, Deputy Director, Division of Taxation, Department of the Treasury.

Commissioner Hull's report constituted a detailed analysis of the proceedings and evidence, replete with findings. Succinctly, many of these findings may be stated as follows:

Mr. Stack's testimony was discussed and his valuations of the subject parcels were recited. An express finding was made concerning the factors considered by Mr. Stack, including personal knowledge and inspection, location, physical characteristics, accessibility by water and land, and availability for various uses. It was found that his analyses of sales where improvements existed on the land turned in part on deductions made for valuations of improvements based generally on personal examination and appraisal. It was further found that 12 "significant" responses and concessions were elicited from this witness which were recited in detail in Commissioner Hull's report.

Mr. Guterl's testimony was given comparable exhaustive analysis in Commissioner Hull's report, including findings as to his valuations, seven elements or factors of consideration resorted to by this witness, tabulation of the sales he adverted to and his opinions as to land values per acre represented by these sales (a list of 25 sales), and findings that he made 13 admissions affecting the probative value of his expert testimony. These 13 admissions were recited in detail.

Mr. Robertson's testimony was given like detailed analysis by Commissioner Hull, again including findings as to the factors considered by the witness, his valuations for the subject properties and tabulation of the sales adverted to and

his opinions as to the value per acre of land signified thereby, 25 sales in all. And findings were made in detail with respect to eight elements on which Mr. Robertson's testimony was weighed.

Commissioner Hull's report considered Mr. Rubenstein's testimony in the same manner, making findings as to the factors resorted to by the witness, his opinions as to true value of the subject properties and tabulation of sales resorted to by this witness and his opinions as to value per acre exhibited thereby. Mr. Rubenstein used 15 waterfront transactions and 23 industrial backland transactions. Commissioner Hull's report makes detailed findings as to 11 relevant concessions made by this witness.

The report, *inter alia*, detailed further evidence, introduced in rebuttal by Erie. Included in the analysis were findings that the evidence did not support a conclusion that Luckenbach Terminals, Inc., in its sale of May 3, 1950, took undue advantage of its purchaser, Lever Bros. Co. There was also included an express finding that in a transaction (initiated as condemnation proceedings) between Erie and the United States of America (property taken October 22, 1941, and settlement or closing made April 29, 1947) no part of the $700,000 payment represented interest, a factor relied on by Mr. Stack.

Similar analysis of the State's witnesses, Mr. Fryer and Deputy Director Neeld, was made. Findings as to five significant factors in Bureau analysis were made. With respect to Mr. Neeld's testimony it was found, *inter alia*, that he held that tax history is of basic importance.

Premised upon the basic findings made, several of which are hereinbefore mentioned, Commissioner Hull's report turned to ultimate findings and determinations. These included the following:

No sales cited by the several experts involved lands "in railroad use at the time of the conveyance," "no railroad company has purchased Hudson River water front properties for railroad use" within the last 30 years, and "none of the

sales properties cited, standing alone, was suitable for such railroad terminal use as the premises under appeal."

The experts' testimony was summarized and it was found "that the selection of sales [by the experts] in this instance [that is, as to parcels Nos. 1 and 3], smacks of * * * partisanship and yet we do not find the opinions of the experts to be useless," but "his sales do not substantiate the true value figure of any of the experts."

It was found that "there is a difference in Hudson County waterfront values as between several areas referred to; and that values diminish north and south of the area generally known as the Exchange Place section of Jersey City." And it was specifically found that land sold by Lehigh Valley Railroad Company to Bay Oil Company on September 16, 1952 at the rate of $800 per acre, was in the remote category, was not comparable to the subject properties and that the price was not indicative of the true value of the lands sold.

It was found that a conveyance to Todd Shipbuilding Corporation (August 31, 1948, by Park Ave. Pier Corp.— 1.61 acres of upland and 3.45 acres under water) at $300,000 included buildings. In respect to the transaction between the United States of America and Erie hereinbefore adverted to, the finding that the sales price did not include interest was reiterated. Commissioner Hull further stated that real estate experts were justified in concluding that in condemnation cases pressure upon the seller may exist to depress the sale price from true value.

Findings were made that the Webb and Knapp interests were overwilling sellers, and that they purchased substantial Hudson County waterfront holdings in 1947 for $7,250,000, and up to 1951 had sold portions thereof for a total of $11,000,000.

Other express findings were made as to the status of improvements in relation to sales and as to pressure or influence on various sellers or purchasers.

Finally it was found that it was proved that railroads have not been acquiring, but have been disposing of waterfront

properties, in recent years, but that this did not point to a conclusion that there was no increase in value of waterfront lands. It was found as a fact "from the evidence of comparable sales" (which had been disclosed in the report as indicated by the matters hereinbefore discussed) and the Consumers' Price Index received in evidence, that there was a trend upward in Hudson River waterfront values between 1940 and the assessing dates involved in these matters.

It was determined that the assessments appealed were insufficient, that the true value of the subject lands was $45,000 per acre as to waterfront parcels Nos. 1 and 3, and $30,000 per acre as to the backland parcel No. 2. Finding as to the alleged increase in value for the 1953 assessment of parcel No. 2, claimed by Weehawken, was expressly omitted, on the ground that that Weehawken appeal was subject to dismissal for adjective reasons.

These are salient features of the findings made by the Division. In its brief presented to the court on these consolidated appeals Erie asserted, "We do not take issue with all of Commissioner Hull's suggested findings of fact" but would "discuss the suggested findings which we believe are erroneous" for lack of support by credible evidence, conflict with the evidence or opposition to pertinent law. This narrows the review to the questioned items. The pertinent general principles of law are briefly stated.

Mathematical calculations in appraisals, though made in the best of faith, can lead to divergent results and should be closely scrutinized. *Aetna Life Insurance Co. v. City of Newark*, 10 *N. J.* 99, 106 (1952); *Town of Kearny v. Division of Tax Appeals*, 137 *N. J. L.* 634, 636, 637 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 409 (1949). Coordination and evaluation of expert evidence, and its attendant highly technical problems especially in the valuation of railroad property, is often a matter of considerable difficulty. This task has been committed by the Legislature to the Division of Tax Appeals, "a body contemplated to bring an informed judgment from specialized experience to the nice balancing

and ultimate resolution of the many complex factors involved." *Delaware, L. & W. R. Co. v. City of Hoboken, supra* (10 *N. J.,* at *page* 425).

With these principles as the compass we turn to Erie's objections.

(a) Erie contends that the Division's finding that there was no evidence of railroad sales of lands in use for railroad purposes was erroneous. We find no prejudicial error. Erie adverts to four sales. One of these is shown by the evidence and admitted by Erie to have been of unimproved and unbulkheaded lands, although a part of the general waterfront terminal tract of the New York, Susquehanna & Western R. R. Co. A second was admitted by Erie to be not used for railroad purposes at the time of a first sale in 1938, but Erie claims that at the time of a second (adjacent) sale in 1947, Lackawanna (parent of the vendor) "had created a freight station on the upland and had installed a floatbridge on the land under water." Mr. Stack testified "it hasn't any land under water, it does not extend to the bulkhead line, but it is a piece of upland adjoining the waterfront," and his testimony demonstrates that the land sold was not available for the type of railroad waterfront terminal use to which the property under appeal was devoted. With respect to the transaction between Erie and the United States of America involved in condemnation proceedings hereinbefore adverted to, there is no doubt that the land was part of Erie's waterfront terminal holdings. It contained "a power house, a paint shop, an oilhouse, an office and state-room, carpenter and machine shop, blacksmith shop, store-room, * * * some small buildings, two molasses tanks * * *, a tie rack * * *, a timber mooring rack and * * * some yard utilities." This is predominantly an industrial or commercial category and the finding that the lands were not in use as railroad terminal lands is reasonably related to the evidence. And Erie contends that two sales by Hoboken R. R. Warehouse and Steamship Conn. Co. to Jarka

Corporation and to Fifth Street Pier Corporation, respectively, were of lands in use for railroad purposes. The Jarka purchase was of 0.26 acres of land without waterfront. It was property bought in connection with and as part of "a very good piece of warehouse waterfront property." The predominant use demonstrated by the evidence was warehousing although tracks serviced the area. The Fifth Street Pier Corporation purchase, of 0.67 acre, was comparable.

(b) Erie contends that the Division erred in finding that "none of the sales properties cited, standing alone, was suitable for such railroad terminal use as the premises under appeal." This finding is a reasonable inference drawn from the evidence. Erie adverts to two sales. One of these was by Lehigh Valley Railroad Company to Bay Oil Company, *ante*. As examples of the evidence, Mr. Guterl testified that a portion of this sale had no land access and had very little utility, that it could be used for storing barges or for fishing nets. He did not consider the entire area sold "as being an intensive railroad use" and testified that it "could be true" that it was practically abandoned for railroad purposes. It was seven miles south of the subject properties and at the time of the hearing before the Division was being used as a ship repair yard and lumber mill. The other sale adverted to by Erie was by California Hawaiian Sugar Co. to Portland Equipment Co., on December 31, 1951, consisting of 36.39 acres of land improved with a covered pier, bulkhead building and "processing" buildings, in Edgewater, north of the subject properties. Its principal use was warehousing with some industrial use, although having railroad facilities.

(c) Erie contends that the Division erred in not accepting without qualification railroad experts' opinions as to true value, and in holding that the municipal experts were warranted in containing their reference sales to Weehawken and Hoboken. We find no error in this respect. These are matters of inference and evaluation of the experts' opinion testimony in support of which there is ample evidence in the record.

(d) Erie asserts that the Division finding that the "Black Tom" sale was not comparable is erroneous. The evidence, hereinbefore adverted to, *i. e.*, in respect to the Lehigh Valley-Bay Oil Company transaction, *ante,* reasonably supports the Division's findings in this respect. Further, as to true value, the sale on the evidence has the appearance of a salvage sale and therefore is not truly representative of the actual worth of the land.

(e) Erie asserts that the Division erred in finding that interest was not included in the $700,000 condemnation price in the transaction between Erie and the United States of America hereinbefore adverted to. Erie points out that the evidence shows that the price was reached, "the claim for interest being waived." This supports the Division's finding.

(f) Erie asserts error in the Division's conclusion that the circumstances surrounding the condemnation matter justified an inference that the price was depressed from true value. *Curley v. Jersey City,* 83 *N. J. L.* 760, 762 (*E. & A.* 1912), supports the Division's appraisal of the facts and expert's opinions.

(g) Erie contends that the Division erred in finding that Webb & Knapp were overwilling sellers. This is a matter of inferences, and none of the evidence cited by Erie categorically opposes the finding. This is based on opinion evidence including that of the railroad's expert, Mr. Guterl, who testified that Webb and Knapp purchased land for investment, and Mr. Robertson's (the Hoboken expert's) testimony that Webb and Knapp disposed of most of their holdings and the sales involved herein were made to rid the investment enterprise of ownership problems. This testimony shows the factual situation and Webb and Knapp's financial success (purchase of lands at $7,250,000 in 1947, sale of much of it before 1951 for $11,000,000).

(h) Erie contends the Division erred in recognizing the Webb and Knapp transactions as demonstrating an increase in property values. Erie's arguments demonstrate the profits realized by Webb & Knapp but discount them on the basis that

their purchase was "wholesale" and sales were "retail." This does not destroy the evidential value, although it may reduce the weight. The facts admitted by Erie justify the Division's findings in this respect.

(i) Erie asserts that the Division erred in holding Holland-America was not a coerced purchaser. This relates to 5th and 6th Street Pier sales. Erie admits that no testimony of anyone involved in the sales was adduced. The determination is sound on that basis alone. The balance of Erie's argument relates to the experts' reasons for accepting, rejecting or discounting the sales. In this there is conflict, again supporting the Division's finding that the evidence of coercion was not convincing, i. e., Erie failed in its burden of going forward with proof of coercion to disqualify the sale. Erie asserts comparable contentions as to the Jarka (piers 7 and 8) sales. This is without merit, and in fact the Division found that there was pressure or influence on Jarka.

(j) Erie asserts that the Division erred in refusing to infer that the lack of railroad purchases precludes a conclusion of increase in value. This argument lacks merits. The mere non-purchase, or even sales of surplus lands, does not *per se* show a lack of increase in value. Indeed it seems that the opposite view might be reasonable: that the railroads did not purchase (and did sell) *because* the lands were increasing in value.

(k) Erie's objection to the Division's statement, that the Director did not resort to "trends," is specious. Erie asserts the same conclusion in its own argument. And Erie's argument opposing the Division's finding that there has been an upward trend in waterfront values since 1940 is premised on Erie's experts' opinions as to the use of some sales and rejection of other sales as bases for opinions. Thus, taking all the evidence into consideration the Division did not err in relying on the sales and their attendant circumstances, and the municipal experts' opinions, to reach the conclusion expressed.

In other respects we have dealt with Erie's specific objections to the findings elsewhere in this opinion, and find them to be without merit.

██ We find that the Division of Tax Appeals made adequate findings of fact to enable us to review the tax assessment matters here involved, and no prejudicial error was committed therein in the respects challenged by Erie.

██ Erie also contends that the Division determinations as to true value, and judgments increasing assessments (and denying decrease in assessments) based thereon are not grounded in substantial competent evidence. We have hereinbefore pointed up the findings in detail and we find in them adequate support for the determinations rendered. Although Erie does not assert lack of evidential support for the major portion of the findings, we have examined all the evidence in relation thereto and have discovered no finding that lacks evidential support although conflicts in evidence exist. The Division's judgments in these respects should be affirmed. Upon the same findings, the determinations and judgments of dismissal of Erie's tax appeals by the Division should be affirmed.

## VI. The Appellate Division Extension of Time for Appeal.

Hoboken and Weehawken assert the question involved whether the Superior Court, Appellate Division, erred in entering an order, on Erie's motion, permitting Erie to serve its notices of appeal upon the Division.

Appeals from state agency decisions are to be taken within 45 days after the date of the service of the decision of the agency or notice of the action taken. *R. R.* 1:3–1(*b*). The judgments of the Division were filed August 27, 1954 and notice thereof was received by Erie not later than August 30, 1954. Erie served notices of appeal on the attorneys for Weehawken and Hoboken and on the Attorney-General, *eo nomine* and as attorney for the respondents Director, Divi-

sion of Taxation, and Division of Tax Appeals. These notices of appeal were filed with the Superior Court, Appellate Division, on October 6, 1954, within the 45-day period prescribed by R. R. 1:3–1(b), supra.

At the time of filing the notices of appeal, the pertinent portion of R. R. 4:88–8, as amended June 28, 1954, effective September 8, 1954 provided:

"* * * Such appeal shall be instituted by filing a notice of appeal with the Appellate Division together with an affidavit or acknowledgment of service of copies of the notice of appeal upon the agency, the Attorney General or upon any person in his office designated by him in writing filed with the clerk of the superior court and all other parties to the proceeding or their attorneys."

Erie, conceiving that it had erroneously failed to serve the Division as well as the Attorney-General, moved the Superior Court, Appellate Division, for an order ruling that its course of proceeding satisfied the requirements of R. R. 4:88–8, as amended, supra, or in the alternative extending the time for service upon the Division of Tax Appeals, under R. R. 1:27B(1)(b) and R. R. 1:27B(2). The extension granted by the Superior Court, Appellate Division, was within the additional 30-day period provided by R. R. 1:27B(2), supra, and it does not appear that the Superior Court, Appellate Division, abused its discretion in applying R. R. 1:27B(1)(b), supra. Erie substantially complied with R. R. 4:88–8 as amended, supra, within the initial 45-day period by serving the Attorney-General as attorney for the respondent Division of Tax Appeals. No prejudice to the Division is shown and the Division appears to waive the alleged defect by virtue of its statement that no brief will be filed in these matters on its behalf. No prejudice to Hoboken and Weehawken could result in the premises inasmuch as they were served within time and Erie's notices of appeal were filed within time. It is observed that the purpose of R. R. 4:88–8, as amended, supra, is to require service of the notice of appeal upon the state agency as well as upon the Attorney-General.

## WEEHAWKEN'S APPEAL (A–154).

The Weehawken appeal relates to the course pursued by it in taking its appeal of the assessments on parcels Nos. 1 and 2 for the tax year 1953 to the Division. The principal question involved is whether Weehawken's appeal to the Division was barred by noncompliance with *L.* 1941, *c.* 291, *sec.* 32, *N. J. S. A.* 54:29*A*–32.

Weehawken's complaint and appeal and notice of application for hearing in this matter were served on May 14, 1953, on an Assistant to the General Manager of Erie at the principal office of Erie in Jersey City, New Jersey, and on May 15, 1953 on "J. M. Craig in the office of P. P. McDermott, Real Estate and Industrial Development Corp." in New York City. Erie does not assert that these individuals could not receive service for Erie. Erie contends that the Division lacked jurisdiction by virtue of the fact that service was not made five days before filing of the complaint (filed May 18, 1953, the last day on which filing thereof was permissible under the statute). The pertinent portion of the statutory provision in question, *L.* 1941, *c.* 291, *sec.* 32, *N. J. S. A.* 54:29*A*–32, reads:

"* * * a copy of the complaint and notice of application for hearing thereon shall be served upon the taxpayer five days before the filing of the complaint * * *."

Erie relied upon *In re N. Y. Central Railroad System,* 29 *N. J. Super.* 469 (*App. Div.* 1954). In the *New York Central* case, *supra,* the facts were comparable to the facts in the present case, but the taxpayer's motion to dismiss was addressed to the Division before any general appearance was effected. In the present matter Erie entered its appearance and participated in the full hearings. At the close of the hearings Erie addressed a motion to the panel seeking dismissal of the Weehawken appeal.

The notice provision of the statute relates to jurisdiction over the person. It is not related to jurisdiction over

the subject matter, nor comparable to a statute of limitation. Weehawken contends, and we so hold, that the five-day notice provision may be waived by general appearance. See *Whalen v. Young*, 15 *N. J.* 321, 333–334 (1954). *Cf. Air-Way Branches, Inc., v. Board of Review*, 10 *N. J.* 609, 614–615 (1952). This distinguishes the present matter from this court's decision in *City of Newark v. Fischer*, 3 *N. J.* 488 (1950) which related to a statutory period of limitation.

Weehawken also advances the question involved whether on Erie's appeal the Division was required to establish the assessment in issue at true value even if Weehawken's appeal was subject to dismissal under *N. J. S. A.* 54:29A–32, *supra*. This question is moot, but see point IV of our disposition of the Erie appeals (A–153 September term 1954), *ante*.

Weehawken admits on this appeal that its stipulation with the other parties in the proceedings before the Division, namely "that the evidence and testimony to be presented would apply to all cases," governs this appeal, and asks the entry of judgment in this court increasing the 1953 assessments of parcels Nos. 1 and 2.

The judgment of dismissal of Weehawken's appeal is reversed. It is appropriate, however, that judgment increasing the assessment conformably to the evidence be entered and filed of record in the Division rather than in this court.

## CONCLUSION.

For the reasons expressed in this opinion the judgments of the Division of Tax Appeals in the Department of the Treasury, State of New Jersey, appealed from, being designated as A–153 September term 1954, are hereby affirmed.

The Division of Tax Appeals judgment of dismissal in respect to the 1953 assessments on parcels Nos. 1 and 2, being designated as A–154 September term 1954, is reversed and that matter is remanded to the Division of Tax Appeals for the making of findings and determination and entry of judgment consistent (a) with the principles expressed in

this opinion; (b) with the stipulation of the parties; and (c) with the findings made in the consolidated appeals by the Division of Tax Appeals.

No. A–153:

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.

No. A–154:

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.