STANFORD ENTERPRISES, PLAINTIFF, v. CITY OF EAST ORANGE, DEFENDANT.

Tax Court of New Jersey

May 22, 1980.

*Harold R. Teltser* for plaintiff.

*Skoloff & Wolfe* for defendant (*Marvin Olick* appearing).

HOPKINS, J. T. C.

This is an appeal from the judgment of the Essex County Board of Taxation as to the assessed value of property described as Block 691, Lot 4, in the taxing district of East Orange, and with the address of 63 Evergreen Place.

The following schedule shows the original assessment, County Board judgment and claimed assessment values of the parties:

| Year | Assessment | County Board | Taxpayer's Claimed Value | Taxing District's Claimed Value |
|------|-----------|--------------|--------------------------|--------------------------------|
| 1975 | $19,200 | $19,200 | $8,000 | $20,800 |

The property is vacant land located between Central Avenue and East Freeway Drive on the westerly side of Evergreen Place in the City of East Orange. It is generally rectangular, slightly irregular, and has a 40.9 foot frontage with a depth of 126.19 feet on one side, somewhat varied on the other side, but the average depth is approximately 130 feet. It has an area of 6,410 square feet. It is located in an area that is zoned for special volume business and, as of October 1, 1974, the zoning required a 75 foot minimum width in order to permit any improvements on the property.

The general area is improved with office buildings and at least one hotel. There are a number of vacant lots in the area, some of which have been acquired by the City for non payment of taxes.

The plaintiff's appraiser testified that the property was substandard in that it had less width than was required by the zoning ordinance in effect at that time. Further, he testified that the area was one in which there were substantial vacancy rates in the office buildings.

The subject property had been on the market for sale for some period prior to the assessment date. However, no interest had been exhibited in it by any developer or investor.

The plaintiff introduced the testimony of an expert appraiser who concluded that the property, as of October 1, 1974, had a value of $8,000. In reaching that conclusion, he utilized four allegedly comparable land sales in the City of East Orange which had occurred during the period July 1976 through January 1978. These sales were as follows:

| Date | Land Area | Price Per Square Foot |
|------|-----------|-----------------------|
| 7/76 | 7,500 sq. ft. | $ 1.06 |
| 8/76 | 7,920 sq. ft. | $ 1.58 |
| 12/76 | 81,791 sq. ft. | $ 2.45 |
| 1/78 | 36,290 sq. ft. | $ 1.72 |

It should be noted that the critical date herein is October 1, 1974, and that the sales utilized by the plaintiff's appraiser all occurred subsequent to the critical date, with the closest sale being approximately 21 months after that date. The plaintiff's expert appraiser also admitted that he did not know the zoning of the allegedly comparable sales and further admitted that, if they were residentially zoned, it would make a difference in his appraisal.

Defendant's assessor testified that the property should be valued at $20,800 as of October 1, 1974. He reached this conclusion by utilizing allegedly comparable sales of improved realty and abstracting therefrom the ratio of the land value to the total sales price. In so doing, he referred to the publication known as *The Appraisal of Real Estate* (1975 Edition), published by the American Institute of Real Estate Appraisers. Said procedure permits an estimate of land value to be extracted from sales of improved properties by allocating the total sale price between land and building. The appraiser must first ascertain the portions of a property's value that may typically be considered attributable to the land and to the building. The procedure is to allocate from the total sale price of a comparative property that part which could reasonably be assigned as building value. The appraiser estimates the depreciated cost of the improvement, and by subtracting that cost from the sale price, finds the remainder to indicate a residual price of the land. In thus abstracting land value from sales of improved property in an area where vacant land sales are lacking, this land residual distribution procedure may be utilized. The por-

tion of the sale price allocated to the land is then treated as if it were the price obtained in the actual sale of vacant land.

In his efforts to apply this procedure, the assessor utilized three sales of improved properties. However, two of the properties were apartment houses located in large volume residence and office building zones. The publication, *The Appraisal of Real Estate*, previously referred to by the defendant's appraiser, states, at page 147, in discussing the abstraction technique, that comparable land sales data should be abstracted from sales of similar improved properties.

The remaining improved property was a two–story and basement, glazed face, office building, located in special medium–volume zone area. His allocation reflected a value of $3.19 per square foot. However, here again, the publication, *The Appraisal of Real Estate* (7th Edition), page 146, states that if the property being appraised includes a lot of undesirable contour or shape, the typical ratio might be affected. Where, as here, we have a substandard lot, it is obvious that the ratio would have to be adjusted to so reflect said factor.

The assessor also utilized a sale of an unimproved lot which was effected on October 1, 1973, one year prior to the critical date, wherein the property sold at $3.23 a square foot. It should be noted that the lot had an area of 126 feet × 155 feet, which was substantially greater than the subject substandard lot. Further, it was located in an area zoned for large volume residences and office buildings.

 A presumption exists in favor of a judgment of a County Board. Moreover, the appellant from a County Board judgment has the burden of ultimate persuasion to upset a County Board judgment. *Passaic v. Botany Mills, Inc.*, 72 *N.J.Super.* 449, 454, 178 *A.2d* 657 (App.Div.1962) certif. den. 37 *N.J.* 231, 181 *A.2d* 13 (1962).

It should be noted that the critical date herein is October 1, 1974, and that the closest sale utilized by the plaintiff's appraiser occurred approximately 21 months after that date. See *N.J.S.A.* 54:4–23 which provides, in pertinent part, as follows:

"All real property shall be assessed to the person owning the same on October 1 in each year. The assessor shall ascertain the names of the owners of all real property *situate in his taxing district, and after examination and inquiry,* determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments, as hereinafter required; . . ."

*In re Erie Railroad System*, 19 *N.J.* 110, 115 *A.*2d 89 (1955), the Court was presented with the question of whether a real estate expert, in formulating his opinion, may rely on sales made within a reasonable time after the assessment date in issue. In that case, *Erie* appealed and alleged error on the part of the Division of Tax Appeals when the Division stated as follows:

". . . since January 1, 1952 was the last assessing date here involved, any sales subsequent to that date could properly have been used by the experts only in corroboration of an opinion of value already established. . . ."

The Court, in passing on the aforesaid allegation of error, stated as follows [p. 130, 115 *A.*2d pp. 99–100]:

"We decline to rule whether an expert may formulate his opinion of true value of property on an assessment date by reference solely to subsequent sales. No such opinion was advanced by the experts who testified in this case. To that extent all the evidence offered and received was reasonably related to the assessment dates in these matters under the Division's ruling and as well under the *Tennant* case, supra. . . ."

As previously stated, the Division's ruling was that the subsequent sales could properly have been used by the experts only in corroboration of an opinion of value already established.

*Tennant v. Jersey City*, 122 *N.J.L.* 174, 175–176, 4 *A.*2d 395 (Sup.Ct.1939) *aff'd* 123 *N.J.L.* 200, 8 *A.*2d 325 (E. & A.1939), which was cited in *Erie, supra*, involved an appeal from the State Board of Tax Appeals' reversal of a reduction in assessment by the County Board of Taxation. In reversing, the Court specifically considered sales both before and after the critical assessment date.

Subsequent sales, in conjunction with sales prior to the critical dates, were also utilized, without comment, in *Atlantic City Electric Co. v. Egg Harbor Twp.*, 135 *N.J.L.* 60, 50 *A.*2d 476 (Sup.Ct.1946), where there was testimony of sales between 1941 and 1946 when the critical date was October 1, 1943, and in *L. Bamberger & Co. v. Division of Tax Appeals*, 1 *N.J.* 151, 62 *A.*2d

389 (1948), when a sale of the property in December 1945 was analyzed in determining true value as of October 1, 1943 and October 1, 1945. However, in the *L. Bamberger & Co.* case, in view of the proximity of the sale date to the assessment date, when one considers the normal contractual arrangements preceding an actual sale, the sale could have been clearly relevant under the standard of being reasonably anticipated as of the latest assessing date. See also, *Samuel Hird & Sons, Inc., v. Garfield*, 87 *N.J.Super.* 65, 208 *A.2d* 153 (App.Div.1965), where the issue was the true value of property as of October 1, 1960, and October 1, 1961. The parties had conceded that true value was the same for both years. The taxpayer's expert witness testified as to a value which was checked with an analysis of comparable sales. He then found further confirmation of his value in a subsequent sale of the subject property on May 15, 1962. Recognizing that the subsequent sale was made under economic compulsion, the Court held that such factor could readily have been given suitable qualifying weight without affecting the substantial probative utility of the sale as a valuation factor.

The aforecited cases indicate substantial authority for the use of subsequent sales where there is also evidence or expert opinion predicated or confirmed by sales prior to the critical date.

*New Brunswick v. State of N. J. Div. of Tax Appeals*, 39 *N.J.* 537, 189 *A.2d* 702 (1963), involved the valuation, for property tax purposes, of commercial property through the use of the capitalization of income method. In commenting on the fact that the taxpayer's expert had taken into account ensuing events, including reduced rents which the parties had negotiated long after the assessing dates, Chief Justice Weintraub stated,

". . . the Division correctly held that the valuation, although based upon a forecast of earnings, must be found upon what was known and anticipated as of the assessing date, unaided by hindsight."

In *Parkview Village Asso. v. Bor. of Collingswood*, 62 *N.J.* 21, 29, 297 *A.2d* 842, 846 (1972), the Court cited *New Brunswick* in stating as follows:

". . . The question here is the fair rental value, looking forward as of October 1, 1967, not 1968, 1969 or thereafter. Hindsight as to later leasing arrangements is irrelevant . . . ."

While the Court in both *New Brunswick* and *Parkview Village* was primarily concerned with rental values, the basic issue was the value as of a critical date. Whether it is subsequent rental values or subsequent sales makes no difference, as both comparable rental values and comparable property sales are major factors for valuation purposes.

■ The quotations from *New Brunswick* and *Parkview Village*, when considered in the light of the prior *Erie* case, should not be relied upon to preclude subsequent sales in all events. It should be noted that *Erie* was affirming the principle enunciated by the Division of Tax Appeals that such sales could be used in corroboration of an opinion already established. In this context, *Erie* held that all the evidence offered and received was reasonably related to the assessment dates. Whether such subsequent events, when offered in conjunction with evidence known or reasonably anticipated as of the assessing date, are used in corroboration or as direct evidence is more theoretical than real. The weight given will be within the province of the trier of fact.

■ In the subject case, plaintiff failed to introduce any substantive evidence of sales or values known or reasonably anticipated as of October 1, 1974. He relied solely on subsequent sales in an attempt to support his conclusion. Further, there was no objective evidence to support his testimony that land values in East Orange had increased 4 to 5 percent a year immediately subsequent to the critical date. To the above must be added that he did not know the zoning of the allegedly comparable sales and, further, he admitted that if the said properties were residentially zoned, it would make a difference in his appraisal.

I find, under the circumstances in this case, that I can give no weight to the opinion of the plaintiff's expert.

The only other testimony offered at the trial was that of the defendant's assessor. His conclusion was that the property had

a value of $20,800 as contrasted with the value of $19,200 which was found by the County Board in fully sustaining the original assessment.

As previously noted, the method utilized by the assessor, while an acceptable procedure, required adjustments somewhat greater than he gave. However, based on his testimony, I cannot find the true value to be more than $3.00 per square foot.

Under the facts presented in this case, there was insufficient substantial evidence to rebut the presumptive correctness of the County Board judgment.

Judgment will be entered accordingly.