CITY OF ATLANTIC CITY, PROSECUTOR, v. STATE BOARD
OF TAX APPEALS ET AL., DEFENDANTS.

Argued October 4, 1939—Decided December 13, 1939.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutor, *Samuel Backer* and *Daniel J. Dowling.*

For the defendants Carolina Boardwalk Corporation and Childs Company, *Selick J. Mindes.*

The opinion of the court was delivered by

PARKER, J.  The substantial question in this controversy is, what was the fair taxable value of the land and building occupied in part or whole by the Childs boardwalk restaurant in Atlantic City as of October 1st, 1936?  The local assessors valued the land at $256,650, the building at $135,300: total $391,950.  The owners appealed to the County Board of Taxation, which refused any reduction of the valuation; on further appeal to the State Board of Tax Appeals, that body, acting by three of its members, fixed a valuation of land, $218,000, improvements, $120,000: total $338,000, or a reduction of $53,950.  The city of Atlantic City sued out the present writ to review the judgment of the state board.

The case is an outstanding example of the growing tendency in the matter of reviewing tax valuations, to minimize the presentation of facts and evidence before the two state bodies to which the legislature has specially committed the task of reviewing valuations, namely the County Boards of Taxation and the present State Board of Tax Appeals.  The printed book in the present case does not show what testimony was

taken before the County Board of Taxation nor, indeed, that any testimony was taken at all before that body. So far as relates to the hearing before the State Board of Tax Appeals, what we find in the return is, the testimony of only one witness taking up some eight pages of the printed book; and for the taxing authorities, the testimony of two witnesses consisting of twelve pages. It was on this testimony that the state board based its decision; and the case being brought to this court by *certiorari,* there was a rule for the taking of depositions, which is expressly permitted by statute, and resulting in a mass of depositions by eighteen witnesses taking up some two hundred and seventy pages of the printed book. To a case of this kind, the pertinent criticism of the Court of Errors and Appeals in the case of *Central Railroad Company of New Jersey* v. *State Tax Department,* 112 *N. J. L.* 5 (at *pp.* 15, 16), is peculiarly applicable. The court said in that case: "The State Board of Tax Appeals based its judgment on the proof submitted to it. It could not and of course should not do otherwise. The Supreme Court, and now we, are asked to review the judgment of that tribunal on proofs which were never before it." We have, of course, considered the case in the light of all the testimony before us; but deem it unnecessary to review it in detail. In our view, the testimony taken before the state board was quite insufficient to warrant the reduction that it ordered, and this apart from the fact that several rulings of that board with regard to the admission of testimony before it were palpably erroneous. True, the reasons in the present case do not specifically allege error in that regard; but in examining the testimony we cannot be blind to the effect of the errors in question as bearing on the determination of the state board.

The property in question is the Childs Restaurant property in Atlantic City on the northwesterly corner of South Carolina avenue and the boardwalk, having a frontage of one hundred and ten feet on the boardwalk and a depth on South Carolina avenue of two hundred and forty-one feet. These measurements are given in the record itself. The sole witness for the owners before the state board gave a general estimate

of valuation without going particularly into detail. He based his estimate in part on a depth of one hundred and seventy-five feet instead of two hundred and forty-one feet. He based his estimate of obsolescence on the hypothesis that the building was eleven years old at the time of the original assessment instead of nine years; he declined at first to make any estimate of the valuation of boardwalk frontage by the foot; and shortly afterwards, under cross-examination, admitted that he was wrong both as to depth and obsolescence, but adhered to his total valuation. The following extract from his testimony is illustrative: "Q. What value per front foot do you place on this property? A. I didn't place a value per front foot. Q. What is your opinion of the value per front foot? A. I haven't figured any opinion, as to the value per front foot. I gave it as a whole. Q. How did you arrive at it? A. I just arrived at the $200,000. Q. Yes, but how did you arrive at that figure? A. What I thought the building and land was worth, as of October 1." Pressed further on cross-examination he stated a valuation of $2,000 a front foot. He was recalled for further cross-examination and asked a question with regard to a boardwalk property a short distance away which had been sold in 1935. An objection was made, stating no ground; the board sustained the objection; counsel undertook to explain the purpose and was stopped by a peremptory ruling. Another question was asked on the same line with regard to the condition of the buildings as compared with those of the Childs property. Again there was an objection, stating no ground. The objection was sustained. Another question, as to whether the witness knew the sale price of the other property. That was objected to and objection was sustained. The result of all this was that the state board refused to listen to a cross-examination with regard to property fairly comparable with that under consideration and deprived itself of such facts as would have been developed by that cross-examination.

As against the vacillating and (to our mind) unreliable testimony of this witness, the city produced before the board a local architect, experienced in building conditions in Atlan-

tic City, and a local real estate man. The architect had made a survey of the premises and checked the original plans in the municipal office. He described the building in detail; testified to his qualifications to estimate original cost and depreciation and arrive at a present value of the building. To a question, what that value was, objection was made, no ground being stated, and the objection was summarily sustained. A further question of cost of reproduction met a like fate. The real estate man, of thirty-three years' experience, testified that the peak of boardwalk frontage was about at Kentucky avenue, five streets to the west; that the Childs frontage was ninety per cent. of that; and valued that frontage at $4,000 a foot.

As to the hearing before the board, our view is that the testimony of the solitary witness for the owner was unsatisfactory on its face, and that the testimony for the city was more specific and more reliable to the extent that it was allowed to proceed; and that the board by erroneous exclusion deprived itself of evidence which was competent and relevant and if admitted might well have led to a different result.

In performance of our statutory duty, we have examined the depositions taken by rule of court. We think the weight of evidence decidedly supports the original valuation, which was adopted by the county board.

Three matters of detail may properly be mentioned at this time. The first is the fact brought out particularly in the depositions, that the building on the property has a foundation very much more substantial and more expensive than required for the present building and available for the erection of a fourteen-story or fifteen-story hotel, if, and when, desired. The second, which was particularly urged in reduction of the valuation, is, that formerly the terminal of the West Jersey and Seashore Railroad Company was at South Carolina avenue near Atlantic avenue on the same street as the Childs restaurant and a little over two long blocks away; and that that terminal has been abandoned and that all the trains into Atlantic City now use the former Reading station some squares away to the westward. The third is, that the

sale of a boardwalk property in 1935 at the northeast corner of Virginia avenue was for $375,000. This last sale was fully exploited and brought out in the depositions, together with the details of character of building, use, &c.

While we incline to think that the fact of the foundation and of its character was a fair subject for consideration, the question of its effect as adding materially to the valuation of the property is problematical and hardly capable of assessment.

As regards the moving of the railroad terminal, we can see no substantial reason for holding that the change of a few blocks as far away as Atlantic avenue should operate to make any substantial reduction in the value of this boardwalk property now in question. The uncontradicted evidence seems to indicate that of the numerous visitors to Atlantic City only about ten per cent. come in by rail, and the rest by other means of transportation. So it would seem that no material reduction in the real estate valuation of this property was caused by that particular circumstance.

As to the Virginia avenue property, it was near enough to the property now in question and so similarly situated as to its frontage that it would be a fair criterion for purposes of comparison, making all proper allowances. As already noted, the board refused to allow any testimony about that sale to be introduced before it.

Our conclusion on the whole case is, that the reduction in valuations ordered by the state board was not warranted either by the evidence before it or by the depositions; and the result is that the judgment of the state board must be set aside, with costs as against the owners, and the assessed valuation affirmed by the county board sustained.