85 N.J. Super. 109 (1964)
204 A.2d 23
THE TOWNSHIP OF MOORESTOWN IN THE COUNTY OF BURLINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
LENORE SIBLEY SLACK, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1964.
Decided October 9, 1964.
*111 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Walter Carson argued the cause for appellant.
Mr. Martin F. McKernan argued the cause for respondents (Mr. McKernan, attorney for respondent Doris S. Cartledge, and of counsel with respondents; Mr. C. Lawrence Gregorio, attorney for respondents Concetta Visceglia, et vir; Mr. Craig J. Turnbull, attorney for respondents Lenore Sibley Slack, et al.).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This appeal involves a jury award in a municipal condemnation case. Plaintiff municipality contends that the verdict was based upon incompetent testimony of so-called comparable sales. The verdict is also impugned as influenced by speculative and conjectural opinion testimony adduced by the property owners and as against the weight of the evidence. The trial judge denied a motion for a new trial on the latter ground.
There are 20 vacant lots involved, mostly 40' x 125'. These are scattered throughout a subdivision plan named "Moorestown Heights," approved in 1924, aggregating some 543 such lots, but never actually developed, except that a high school has been recently constructed on the northerly portion of the tract. The platted lots and interior streets are all merely "on paper." To develop these lots for home construction, woods and brush would have to be cleared, and streets and all standard utilities would have to be installed. Only two of the lots front on an existing thoroughfare (Stanwick Avenue).
The plaintiff was acquiring this tract pursuant to the "blighted area" provisions of N.J.S.A. 40:55-21.1 et seq., acting under a resolution adopted June 24, 1959. Two hundred and thirty-nine of the lots in the tract had been or were later acquired by plaintiff by tax foreclosure and 121 by purchase from lot owners.
Condemnation commissioners had originally awarded $3,575 for the lots under appeal. The jury allowed an aggregate *112 of $10,960. (It appears, however, that the jury, because of a misunderstanding of the testimony of the owners' valuation expert, explained hereinafter, increased its verdict by at least $1,800, and possibly more.) The single valuation expert for defendants valued the lots at $13,080. At the conclusion of the evidence, however, he conceded mathematical errors in his computations as to three of the parcels, so that his corrected aggregate valuation was $12,053. The higher of two realty experts for the plaintiff valued the lots at $2,900.
The municipality strongly relies upon evidence of sales of some 121 lots in this Moorestown Heights tract to the municipality shortly before the present condemnation at prices roughly similar to the appraisals for lots under appeal at similar locations in the tract given by its expert at the trial (about $500 per lot on the abutting street, Stanwick Avenue, and progressively less for interior lots). These sales resulted from a general offer by the municipality to purchase any such lots at five times their assessed value, based upon the "general understanding" that real estate in Moorestown is assessed at about 20% of true value. These sales were ignored by defendants' expert, McNutt, because regarded by him as made under compulsion in view of the impending condemnation by the purchaser.
The main bone of contention on this appeal is McNutt's reliance, in arriving at his values for the subject properties, on sales of land on the so-called "Club Estates" tract, which lies across Stanwick Avenue to the west opposite the Moorestown Heights tract. This is a development of some 64 very high-grade residential lots, with widths varying from 100 to 175 feet and depths of from 200 to 350 feet, having paved streets and all utilities installed, and being the site of some homes already erected in the $40,000 to $60,000 class. On its westerly side it abuts a golf club. The tract was described by a witness as "the finest residential tract in South Jersey."
Over strenuous objection by the plaintiff, McNutt was allowed to testify to four recent sales of vacant lots in the Club Estates tract at $13,500, $20,000, $22,500 and $16,500, *113 respectively, to support his valuations of the Moorestown Heights lots under appeal. These sales were at square-foot prices of 66 cents (for a Stanwick Avenue lot) and 33, 37 and 38 cents, respectively, for interior lots. McNutt used those sales in this manner. He established zones of value on both sides of Stanwick Avenue, on the basis of what he described as a "grid" system. His base was the "grid" on the Club Estates tract, which set a valuation of 66 cents per square foot for Stanwick Avenue lots and 40-50 cents and 30-40 cents for interior zones therein. On the basis thereof he then determined relative unit square-foot values for the corresponding zones on the Moorestown Heights side of Stanwick Avenue. Thus, he established 33 cents for a zone comprising lots on Stanwick Avenue as being, in his opinion, worth one-half the rate of the Stanwick Avenue zone in the Club Estates tract, and 12 cents, 10 and 9 cents, respectively, for the progressively interior zones of the Moorestown Heights tract. He fixed those values in percentage relationships to the supposedly corresponding interior zone values he had set for the Club Estates tract. His valuations for the particular lots here under appeal also included additions for "corner influence" (notwithstanding the "streets" were only on paper) and $25 as a "subdivision and tax accumulation fee," the testimonial justification for which was obscure.
Plaintiff's principal objection to this testimony is that the Club Estates sales were not of "comparable properties." The assertion is that the properties sold must be "substantially similar in conditions," Manda v. Orange, 82 N.J.L. 686, 688 (E. & A. 1912); In re Housing Authority of Newark, 126 N.J.L. 60, 65 (E. & A. 1940). To substantiate its contention that the Club Estates lots were not substantially similar to those under appeal plaintiff cites not only the circumstances already mentioned, but also the following. While the Stanwick Avenue frontage of Moorestown Heights to a depth of 700 feet is zoned by the municipal ordinance for 150' minimum width residence lots (30,000 square feet), and the remainder for 100' (20,000 square feet), the scattered separate *114 ownerships in 40-foot units would have necessarily resulted (had there been no condemnation) in variances for the erection of homes on the smaller lots purchased before the zoning ordinance was adopted. This would have fixed the character of the tract as a small home development. This contrasts with the large lots and spacious homes on the Club Estates tract. Moreover, the latter are subject to deed restrictions until 1980 calling for 100-foot setbacks along Stanwick Avenue and minimum $30,000 building cost.
Notwithstanding the "substantial similarity in conditions" test for admissibility of comparable sales stated in the Manda and Housing Authority of Newark cases cited above, there is pronounced recognition in other of our decisions that such similarity need not obtain in all comparative respects, so long as there is sufficient similarity in some significant respects to permit the expert testifying, or the fact-finder, to draw rational probative valuation inferences from the sales cited, after weighing and allowing for such differences as do obtain between the properties sold and that which is the subject of the valuation litigation. The weight to be accorded the sales, either as direct evidence of value or as support for the expert's opinion of value, is for the fact-finder. See In Re Port of New York Authority, 28 N.J. Super. 575 (App. Div. 1953); Rockland Electric Co. v. Bolo Corp., 66 N.J. Super. 171 (App. Div. 1961); Atlantic City v. State Board of Tax Appeals, 123 N.J.L. 464, 469 (Sup. Ct. 1939); City of Garfield v. State Board of Tax Appeals, 131 N.J.L. 364, 366 (Sup. Ct. 1944), affirmed 132 N.J.L. 153 (E. & A. 1944). Note, particularly, Lustine v. State Roads Commission, 217 Md. 274, 142 A.2d 566, 569 (Ct. App. 1958). Precise guidelines as to degrees of similarity requisite to admissibility of comparable sales cannot be fixed. Much discretion must be reposed, in this regard, in the trial judge. In re Port of New York Authority, supra (28 N.J. Super., at p. 581).
Important to a trial judge's resolution of the discretionary question of admissibility of proffered comparable sales *115 is the matter of availability of other sales having less disparity in conditions surrounding the transaction, including those relating to physical aspects, the willing seller-willing buyer concept, the time or date of the sale, and any other relevant comparative considerations. In this regard, plaintiff makes the telling point that there was evidence available of the many recent sales to the municipality, mentioned above, of almost identical parcels in the same Moorestown Heights tract. In the absence of affirmative evidence that the sellers were under compulsion, sales to an authority having the power of condemnation do not by reason of that fact alone necessarily lose competency or significant probative weight. See State by State Highway Commissioner v. Burnett, 24 N.J. 280, 294 (1957); Curley v. Jersey City, 83 N.J.L. 760 (E. & A. 1912). Here, there was also adduced by plaintiff a sale of nearby acreage at $750 per acre, compared with the rate of $900 per acre allowed for the subject properties by plaintiff's expert. While the sale in question had only small road frontage, only two of the lots here involved have existing road frontage.
In view of what has been said, were we presented with the simple question whether the Club Estates sales were competent evidence of Moorestown Heights true values, or susceptible of citation and use by an expert as background material supportive of his opinion of such values, a close case would be presented, and the discretionary determination of the trial judge for either admission or exclusion might well be sustained. As against all the factors of substantial difference between the two tracts, the case for admissibility is supported at least by the strong factor of similarity consisting of close proximity of location.
However, we feel impelled to reverse this judgment as we are well satisfied that the verdict was greatly against the weight of the evidence, that it was to a substantial degree the product of mistake by the jury, and that the testimony of defendants' witness, McNutt, upon which the jury obviously strongly relied, was entitled to little weight.
*116 McNutt's "grid system" of comparative valuation between the Club Estates and Moorestown Heights tracts was neither justified by him nor, in our view, justifiable. He said he relied upon a real estate text in using it but could not identify the authority. Why artificially created and arbitrary zones in the developed Club Estates tract should be deemed to have correlative comparative value ratios to supposedly corresponding zones in the greatly dissimilar undeveloped Moorestown Heights tract does not appear. Indeed, it is not explained why interior lots in the Club Estates tract should be assigned, as they were, markedly lower true values than the lots in the same tract on Stanwick Avenue, particularly in view of other testimony, cogent on its face, that such lots would suffer comparatively in value because facing the unattractive, undeveloped Moorestown Heights land across the road rather than the golf course on the other side.
If Club Estates sales are of any relevance at all in this case, the four such sales cited here by McNutt indicate an average value of about 43 cents per square foot for Club Estates lots, whereas he appraised Moorestown Heights lots on Stanwick Avenue at 33 cents, or one-half of the 66-cent rate for the single Stanwick Avenue sale on the Club Estates tract. Considering the vast physical and developmental differences between the two tracts, the resulting valuation of some Moorestown Heights lots by McNutt at 33 cents a square foot, and by the jury at about two-thirds that rate, compared with the average sales rate of 43 cents for Club Estates property, was, we think, clearly unjustifiable. This conclusion is also fairly applicable to McNutt's appraisals for the interior lots under appeal, with which the jury's awards corresponded even more closely, particularly in the light of the many apparently voluntary sales to the municipality at much lower rates right in the same Moorestown Heights tract. This conclusion is buttressed by the fact that until the municipality offered to buy lots in this tract for the blighted area program there was and had been no market at all for such lots many years past.
*117 Obvious mistakes by the jury compound the vulnerability of their verdict. Lots 43 and 44 in Block 2 were valued by the jury at $900 each, even though McNutt appraised them both as an entirety in a single ownership at $1,225. (The municipal expert, Lamon, valued them at $100 each.) Obviously, this portion of the verdict would have to be set aside, in any event, as not supported by any evidence in the case. While the jurors' error is undoubtedly due to their misunderstanding of McNutt's appraisal as being $1,225 for each lot and a desire to allow about 73% of his valuation, the latter fact betrays the lack of understanding by the jury of the basic testimony in the case. McNutt had explained that he allocated substantially lower valuation rates to Propert Boulevard (as platted), an interior street, on which these particular lots are situated, than to Stanwick Avenue. This, of itself, was rational, since Stanwick Avenue is an existing street and Propert Boulevard is not. (Lamon followed the same approach, but at much lower rates for both streets.) Yet this jury, blindly following what they thought were McNutt's dollar valuations of the Propert Boulevard lots, appraised them almost as high as what they allowed on Stanwick Avenue lots ($900, as compared with $1,050).
The jury fell into the identical type of error in awarding $900 each for lots 5 and 6 in Block 6 which McNutt valued at $1,250 in entirety. These awards would, of course, also have to be set aside in any event as unsupported by any evidence. These lots, moreover, are also on Propert Boulevard (as platted). Thus the criticism above of the jury's comprehension of the basic approach of the experts applies here again.
We are aware of the substantial weight ordinarily to be attributed to the judgment of the trial court in passing upon a motion for a new trial when the question of the weight of the evidence is presented anew upon appeal. Kulbacki v. Sobchinsky, 38 N.J. 435 (1962). In the present case, however, not all of the considerations militating against this verdict, discussed above, were brought out on the motion before the trial tribunal. We find the verdict clearly against *118 the weight of the evidence by reason of the cumulative effect of all the factors discussed above. We are satisfied that the interests of justice will best be served by a new trial of this case in entirety, particularly since it would have to be retried in any event as to lots 43 and 44 in Block 2 and lots 5 and 6 in Block 6. A new trial as to all 20 lots has the additional advantage of better assurance of relative fairness of the ultimate awards as to all the properties involved.
We have considered the argument in defendants' supplemental brief that the jurors' mistake in valuation of four of the lots warrants severance of the verdict as to the awards for those from the awards as to the other 16 lots, and that we should make our own valuation as to the former by exercise of our original jurisdiction and affirm the verdict as to the other lots. However, the rationale of our conclusions on the whole case, as stated above, precludes our following that course.
Certain other grounds of error argued by plaintiff have been considered and found without merit.
Reversed and remanded for a new trial. No costs on this appeal.