ALMAX BUILDERS, INC., PLAINTIFF, v. CITY OF
PERTH AMBOY, DEFENDANT.

Tax Court of New Jersey

February 26, 1980.

*Kovacs, Horowitz & Rader,* for plaintiff (*D. Bruce Unger,* appearing).

*Rosenblum & Rosenblum,* for defendant (*Edward G. Rosenblum,* appearing).

ANDREW, J. T. C.

This is a proceeding to review the real property assessment of the property located at 163–165 Smith Street, Perth Amboy, New Jersey, and designated on the tax map of the taxing district as Block 59, Lot 20. The assessment under review for the tax year of 1978, which was affirmed by the Middlesex County Board of Taxation, was as follows:

| | |
|---|---|
| Land | $ 91,800 |
| Improvements | 77,100 |
| Total | $168,900 |

Although the petition filed in the within matter raised three separate issues, it was agreed at the pretrial conference that the issues of discrimination and exemption were being abandoned by plaintiff and that the only issue to be determined by the Tax Court was whether the assessment in fact exceeded the true value of the subject property.

The property consists of a two-story masonry and wood frame retail and office building containing a ground area of 7,752 square feet along with an 800-square-foot basement. The second floor, also containing 7,752 square feet, was vacant and lacked heat, air conditioning and plumbing. The improvement was constructed in about 1920 and was determined to be in fair condition as of the assessment date, October 1, 1977.

Isadore Brown, the president of plaintiff Almax Builders, Inc., testified on behalf of plaintiff. He stated that the subject property was purchased by Almax Builders, Inc., in May 1978 for $63,000 (which sale is subsequent to the assessment date of

October 1, 1977). Brown then described the circumstances surrounding the purchase of the property and indicated that the subject "was owned by four gentlemen who simply walked away from the property. They owed a hundred and some odd thousand dollars on the property and it was not feasibly economical to run the building." The witness also testified that the property was about to be returned to the then mortgagee, Teachers Insurance and Annuity Association of America, and that the owners were quite anxious to sell it. It was also indicated that the property was purchased through the brokerage firm of Jacobson, Goldfarb & Tanzman by way of a cash payment of approximately $23,000 and a mortgage loan of $40,000 which was obtained from the Commonwealth Bank of Metuchen.

Brown further stated that the first floor was being utilized for five stores, and the second floor was vacant and had no heat, air conditioning or plumbing. He then testified as to five leases relative to the rental of the entire first floor. The witness indicated that the total rental income would be approximately $29,000. The expenses as testified to by the witness were: fuel $6,500, insurance $2,500, water and electricity $1,000, maintenance $1,200, for a total expense of $11,200. This was the total substance of plaintiff's proofs. There was no proof as to land values, capitalization rates, economic rents, etc. There were no other witnesses offered.

Michael Hiller, appraiser, testified on behalf of defendant. He stated that he considered the three approaches to value, but for the purpose of the subject appraisal he relied on a cost analysis and an economic analysis. By means of the cost approach he arrived at an overall value of $251,000. He then testified that he arrived at an indicated value of $233,600 by use of the economic approach. He concluded that since the subject is an income investment type property and its value is directly related to the income it produces, the income approach predominated and therefore his correlated value was $233,600.

When asked why he did not give weight to the sale of the subject property for $63,000 in May 1978, he stated that he

considered it a distress sale and as such was not an arm's-length transaction. He indicated that a 30% capitalization rate would have to be utilized to justify the sale price in light of the actual income produced by the property. This was a "flag" that it was not a usable sale. He further reinforced his opinion based on the imminency of a mortgage foreclosure.

The taxing district contends that this court cannot consider a sale (whether comparable property or the subject itself) if the sale occurs after the assessment date. It relies upon *New Brunswick v. Division of Tax Appeals*, 39 *N.J.* 537, 189 *A.2d* 702 (1963), as authority for this proposition. In *New Brunswick* Chief Justice Weintraub, in dealing with reductions in *rentals* which occurred after the assessing date, said that "valuation, although based upon a forecast of earnings, must be found upon what was known and anticipated as of the assessing date, unaided by hindsight." *Id.* at 545, 189 *A.2d* at 706. Interestingly enough, there are no cases in New Jersey which squarely confront the issue of whether the quoted language would prohibit use of a comparable sale or sale of the subject after the assessment date.

The only recent case that considered the timeliness of a comparable sale offered to prove the true value of real property in an assessment context was *Van Realty, Inc. v. Passaic*, 117 *N.J.Super.* 425, 285 *A.2d* 52 (App.Div.1975), wherein the court held that a comparable sale which occurred 2½ years *before* the assessment date there involved was not too remote and its weight was for the trier of fact. In *Atlantic City v. State Board of Tax Appeals*, 123 *N.J.L.* 464, 9 *A.2d* 702 (Sup.Ct.1939), the syllabus prepared by the court indicated:

> In an appeal before the State Board of Tax Appeals relating to valuation for taxation, the parties have a right to present evidence with regard to voluntary sales of other properties in the immediate neighborhood within a reasonable time *before and after the statutory date of assessment*; and it is error on the part of the State Board to exclude such evidence. [at 465, 9 *A.2d* at 702; emphasis supplied]

The quoted language would seem to be dispositive of the present issue; however, the sales in that case actually occurred prior to the assessment date and therefore the question of the

admissibility of a sale occurring after the assessment date was not before the court.

The only reported case in which the issue of the admissibility of a sale occurring after an assessment date was posited was *In re Erie Railroad System*, 19 *N.J.* 110, 115 *A.2d* 89 (1955). The court was confronted with an appeal from the Division of Tax Appeals involving an assessment date of January 1, 1952 and comparable sales that ranged in time from 1938 to 1953. The Division of Tax Appeals permitted evidence relative to sales occurring after the assessment date and considered such post-assessment date sales in arriving at its determination. On appeal the issue was clearly presented; the court, however, declined to rule on whether an expert may base his opinion solely on sales subsequent to an assessment date. It did state that the subsequent sales therein were reasonably related to the assessment dates and, "Therefore, even if there was error in the expression of the permissible scope of evidence, it was not prejudicial here. It caused neither unwarranted exclusion of evidence nor erroneous consideration thereof." *Id.* at 130–131, 115 *A.2d* at 100. It should be noted that Justice Burling made reference to the state of the record in *In re Erie Railroad System* as being similar to the record in *Tennant v. Jersey City*, 122 *N.J.L.* 174, 4 *A.2d* 395 (Sup.Ct.1939), aff'd 123 *N.J.L.* 200, 8 *A.2d* 325 (E. & A.1939), with regard to the use of post-assessment date sales.

In *Tennant* the court, without comment as to admissibility, considered five sales subsequent to the assessment date along with two sales prior to that date. This practice was followed, also without comment, in *Gannon v. State Board of Tax Appeals*, 123 *N.J.L.* 450, 9 *A.2d* 531 (Sup.Ct.1939); *Atlantic City Electric Co. v. Egg Harbor Tp.*, 135 *N.J.L.* 60, 50 *A.2d* 476 (Sup.Ct.1946); *L. Bamberger & Co. v. Division of Tax Appeals*, 1 *N.J.* 151, 62 *A.2d* 389 (1948) (sale of subject property after assessment date) and *Rek Investment Co. v. Newark*, 80 *N.J.Super.* 552, 194 *A.2d* 368 (App.Div.1963) (also a sale of subject property after assessment date). Most recently, the court, in *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65, 208 *A.2d* 153 (App.Div.1965), considered, without comment as to time, a

sale of the subject property therein involved, which sale occurred 8½ months after the assessment date.

This court also reviewed cases in the field of condemnation law and discovered that unfortunately there is no more definitive rule in condemnation cases with regard to sales occurring after the appropriate valuation date than there is in the real property tax assessment cases. *See In re Port of New York Auth.*, 28 *N.J.Super.* 575, 101 *A.2d* 365 (App.Div.1953).

 It would seem that basic to the resolution of the admissibility of the sale in question is a consideration of the concept of relevance. Relevant evidence is that evidence which has a tendency in reason to prove a material fact. *Evid.R.* 1(2). If the evidence offered renders the desired inference more probable than it would be without the evidence, then the evidence is admissible. *Hagopian v. Fuchs*, 66 *N.J.Super.* 374, 169 *A.2d* 172 (App.Div.1961). So long as the factfinder can draw a rational probative valuation inference from a proffered sale, the sale should be admissible, leaving the weight to be accorded such sale or sales to the factfinder. *Moorestown Tp. v. Slack*, 85 *N.J.Super.* 109, 204 *A.2d* 23 (App.Div.1964).

The language of Judge Conford in *Moorestown Tp.* is helpful in this regard:

> Important to a trial judge's resolution of the discretionary question of admissibility of proffered comparable sales is the matter of availability of other sales having less disparity in conditions surrounding the transaction, including those relating to physical aspects, the willing seller-willing buyer concept, *the time or date of the sale*, and any other relevant comparative considerations. [at 114–115, 204 *A.2d* at 26; emphasis supplied]

 So long as a proffered sale is not remote, the sale should be admitted for its rational probative valuation inference. This court is constrained to conclude that a strict interpretation of the language in *New Brunswick v. Division of Tax Appeals*, *supra*, 39 *N.J.* 537, is not controlling on the issue involved herein since that case did not concern sales after a valuation date but rather diminished rental incomes subsequent to an assessment date. One cannot deny the logic of the equal rational probative value of a sale which occurs one day after the assessment date

compared to its occurrence one day prior to such date. Appraisal experts are capable of making adjustments for time. As a matter of appraisal theory, adjustments must be made for time in any event in order to render a comparable sale an indication of value for the property under consideration. *American Institute of Real Estate Appraisers, The Appraisal of Real Estate* (7 ed. 1978), 281.

■ Having determined that the present sale is admissible, consideration must next be given to the probative weight to be allocated to the sale. It is well settled that a bona fide sale of the subject property may be indicative of the true value of the property, but such sale is not controlling in the issue of value. *L. Bamberger & Co. v. Division of Tax Appeals, supra; Rek Investment Co. v. Newark, supra; Harborside Warehouse Co., Inc. v. Jersey City,* 128 *N.J.L.* 263, 25 *A.2d* 291 (Sup.Ct.1942), aff'd 129 *N.J.L.* 62, 28 *A.2d* 91 (E. & A.1942), *cert.* den. 318 *U.S.* 769, 63 S.Ct. 763, 87 L.Ed. 1140 (1943). The courts in New Jersey have uniformly held that the selling price of the subject property does not necessarily represent its true value, and it is for the factfinder to weigh and appraise the factors surrounding a sale to determine if there were "special" circumstances that may have had an effect on the amount of the sales price without affecting its true value. *Ibid.*

■ If the transaction under consideration reflects that the seller was under greater economic compulsion to sell than the ideal hypothetical "willing seller," this factor must be given suitable qualifying weight. *Rek Investment Co. v. Newark, supra; McCrory Stores Corp. v. Asbury Park,* 89 *N.J.Super.* 234, 214 *A.2d* 526 (App.Div.1965).

■ I find in the instant matter that special circumstances did exist which affect the sales price as not being indicative of true value. As stated by the president of plaintiff corporation, this was a sale by an owner "who simply walked away from the building". A mortgage foreclosure was imminent and the indication was, and I find, that the seller was under pressure to consummate the transaction. I find that I cannot totally disre-

gard the sale but conclude that I can give little weight to it, especially in light of the actual income that was being generated in the year of the sale, which indicated that the true value was substantially greater than the sales price.

I find the testimony of Hiller, the taxing district's expert, to be more persuasive on the question of value although I do not totally agree with him as to what constituted economic rents. It is felt that the income approach, which is based on the principle of anticipation, predominates in this case since property such as the subject is purchased on the basis of the income the subject is capable of producing to the investor. *Samuel Hird & Sons, Inc. v. Garfield, supra.* It is clear from the testimony, and I find, that plaintiff is such an investor.

It is not only the right but the duty of the Tax Court to apply its own judgment to the proffered valuation data in order to arrive at full true value and fix an assessment accordingly. *Samuel Hird & Sons, Inc. v. Garfield, supra* 87 *N.J.Super.* at 73, 208 *A.*2d 153; *Humble Oil & Refining Co. v. Englewood Cliffs,* 71 *N.J.* 401, 404, 365 *A.*2d 929 (1976). Based on the leases in evidence which indicate rentals ranging from $2.80 a square foot (Smart Size of New Jersey, Inc.) to $4.93 a square foot (Elizabethtown Gas Company) and the comparable rental testified to by Hiller (Public Service Electric & Gas Company—$4.43 a square foot), I find the economic rental for the first floor to be $4 a square foot. I find that I cannot accept Hiller's estimate of gross rent potential for the first floor of the subject property ($4.50 a square foot) because he failed to give sufficient consideration to basement space included in two of the rentals at no additional charge (Smart Size of New Jersey, Inc. and Singer Sewing Machine Retail Store), which would have the effect of reducing the gross rental figures per square foot in each. I find that I cannot accept the gross rent potential submitted by Hiller for the second floor as representative of economic rent. The estimate of $2 a square foot for space which is unheated and without plumbing seems excessive. I find that dead storage space such as that involved in the subject could not command

more than $1.25 a square foot in the market; therefore, I will allow this figure for the second-floor rental as being realistic and reasonable under the existing circumstances.

I am again constrained to find that Hiller's estimate as to the gross rent potential for the basement of $1,200 as being excessive. I will accept the sum of $1 a square foot for the basement as constituting economic rental and being a realistic rental for unfinished basement space. It should be noted that plaintiff offered no evidence as to economic rentals but simply produced four existing leases in evidence. This does not assist the court in estimating the value of space not covered by a lease agreement, as are the second floor and 800 square feet of the basement. Because of the fact that the entire second floor was actually vacant the expert for the taxing district allowed a vacancy factor of 10%. I find this to be realistic and appropriate and will allow the use of such an estimate.

I will accept the expense figures submitted by the taxpayer as being fair and reasonable. I will allow a return on investment of 9½% as being a reasonable and realistic return not controverted by the taxpayer. As a matter of fact, plaintiff offered no evidence as to the rate of return. I will accept defendant's recapture rate of 3.33% indicating an estimated economic life of 30 years. I base this finding on the testimony of the taxing district's expert as to the age and condition of the improvement and his estimate of the useful life of the subject improvement.

I find that I must accept the existing assessed value for the land value since Hiller failed to support his indicated land value with any vacant land sales or by the land residual technique, and plaintiff failed to provide any proof whatever in this regard. It is understood, however, that since the income approach to value is being utilized by the court, the estimated land value will have a minimal impact on the final valuation. *American Institute of Real Estate Appraisers, the Appraisal of Real Estate, supra.*

I have determined by means of the income approach that the value of the subject property is as follows:

Economic rent

| | |
|---|---|
| First floor—7752 square feet at $4 | $31,008 |
| Second floor—7752 square feet at $1.25 | 9,690 |
| Basement—800 square feet at $1 | 800 |
| Total gross income | $41,498 |
| Less vacancy and collection loss at 10% | − 4,149 |
| Effective gross income | $37,349 |
| Less operating expenses | 11,200 |
| Net operating income | $26,149 |
| Deduct income to land | $12,806 |

(91,800 x 13.95% (4.45% + 9.5%) 4.45% represents actual tax rate)

| | |
|---|---|
| Net income to improvements | $13,343 |

$13,343 capitalized at 17.28%

| (9.5% + 4.45% + 3.33%) (Rounded) | 77,200 |
|---|---|
| Add value of land | 91,800 |
| Total value | $169,000 |

■ Since this value does substantiate the correctness of the assessment, I affirm the action of the Middlesex County Board of Taxation. Judgment shall be entered accordingly.