TAX COURT OF NEW JERSEY



**MARY SIOBHAN BRENNAN**
**JUDGE**

495 Martin Luther King Blvd., Fourth Floor
Newark, New Jersey 07102
609 815-2922, Ext. 54560
Fax: 609 815-3079

March 5, 2026

HENRY LA CAP, Attorney at Law
Skoloff & Wolfe, P.C. 629 Parsippany Road
293 Eisenhower Pkwy
Parsippany, New Jersey 07054-0438

THOMAS MICHAEL BROGAN, Attorney at Law
CHASAN LAMPARELLO MALLO & CAPPUZZO, PC
300 Lighting Way, Suite 200
Secaucus, NJ 07094

Re:     VERTELLUS BAYONNE, LLC V BAYONNE
        Docket No.: 013179- 2020

This letter constitutes the court's opinion with respect to the motion *in limine*

filed by City of Bayonne (defendant).

A motion *in limine* is a pretrial request that certain inadmissible evidence not

be referred to or offered at trial. R. 4:25-8(a)(1). A motion regarding the admissibility

of evidence must be one that if granted would not result in the dismissal of a

plaintiff's case. See Conforti v. County of Ocean, 255 N.J. 142, 170 (2023).






Defendant moves, *in limine*, (1) to bar at the time of trial, admission of evidence of unforeseen property sales occurring after the statutory October 1, 2019 valuation date; (2) to bar at the time of trial, admission of evidence of unforeseen proposals for environmental remediation/abatement deductions that were derived after the statutory October 1, 2019 valuation date; and (3) to bar the admission at trial, the conclusions of value that are derived from said unforeseen property sales and said unforeseen environmental remediation/abatement deductions. Defendant's motion is granted in part and denied in part.

Pursuant to R. 1:4-7, the court makes the following findings of fact and conclusions of law in this matter.

I.      Procedural History and Factual Findings

This matter concerns the 2020 local property tax appeal filed by Vertellus Bayonne, LLC (taxpayer) with respect to six (6) separately assessed parcels located within the vicinity of Avenue A and Newark Bay in Bayonne, New Jersey. These parcels, positioned immediately northwest of the Bayonne Bridge, are identified on the Bayonne tax map as Block 332, Lots 2,4, and 5 as well as Block 360, Lot 1 and Block 361, Lot 12, and Block 362, Lot 3 (collectively known as the Subject Property). Together they comprise approximately 8.35 acres and are in Bayonne's industrial zone. Six (6) of the acres are upland and 2.35 acres are submerged.

2

As of the statutorily imposed valuation date of October 1, 2019, the Subject Property was improved with 150,285 square feet of vacant office and industrial space as well as multiple storage tanks. Historically, the Subject Property housed the industrial operations of Vertellus Specialties, Inc., a chemical manufacturing facility specializing in the production of castor oil. In May 2016, Vertellus Specialties, Inc. filed for Chapter 11 bankruptcy shortly before being sold to its lenders and permanently ceasing operations on the site.

Taxpayer filed timely appeals to the Hudson County Board of Taxation, which held a hearing on November 5, 2020. Memorandums of Judgment were mailed to the parties on November 12, 2020, which affirmed the assessments on the basis that the presumption of correctness had not been overcome. On December 10, 2020, taxpayer filed a complaint with the Tax Court appealing the Hudson County Board Judgments.

Pursuant to a September 29, 2025 Case Management Order establishing a December 2, 2025 trial date, the parties exchanged expert reports on October 31, 2025. Thereafter, at the parties' request, the trial date was adjourned to March 5, 2026.

On January 2, 2026, defendant filed its motion *in limine*. At the parties' request, the March 5, 2026 trial date was converted to a hearing on the motion, and the trial date rescheduled to May 28, 2026.

Both defendant's and taxpayer's experts concluded that the highest and best use of the property was for demolition of the existing improvements and redevelopment of the site as vacant land. Both experts relied upon vacant land sales comparables and deducted estimated demolition costs to arrive at an indicated final land value.

Defendant seeks to bar two property sales relied upon by taxpayer's expert. Specifically, comparable sale #5, which closed on December 15, 2020 (the Togus Sale), and the sale of the Subject Property, which closed on January 28, 2021 (the Gamal Group Sale).

Additionally, defendant seeks to bar the admission of data used by taxpayer's expert derived from a March 5, 2020 proposal by Phoenix Equipment Corp.; February 11, 2020 asbestos inventory tables quantifying the asbestos present at the subject improvements as of the valuation date; and a 2020 remediation cost estimate table submitted to the New Jersey Department of Environmental Protection in connection with an annual remediation Cost Review/Estimate report regarding ongoing remediation at the Subject Property (July 27, 2020 AECOM LSRP report.)

II.    Arguments

Defendant argues that because the valuation date is October 1, 2019, references in taxpayer's appraisal report to the January 28, 2021 sale of the Subject

4

Property, and comparable land sale number 5, which closed on December 15, 2020 should be barred at trial as they occurred after the valuation date.

Similarly, defendant seeks to exclude references in taxpayer's appraisal report to a March 5, 2020 "Environmental Remediation and Demolition Costs of Existing Facility and Final Value Estimate" as well as, asbestos remediation inventory tables dated February 11, 2020, as these documents were created after the valuation date.

Taxpayer asserts that defendant's arguments have no basis in law, and that existing case law permits the admission of sale transactions after the valuation date, with weight being accorded to the evidence by the trier of fact. Regarding the remediation and demolition cost estimates and asbestos inventory tables, taxpayers assert that they are admissible because they clarify conditions existing at the Subject Property on the valuation date, although created later.

III.   Legal Analysis

A tax assessor is responsible for determining the taxability of property and for the equitable distribution of the tax burden in conformity with statutes and regulations. In appeal proceedings before a county board, the assessor's valuation is presumed to be correct and the burden of proving differently is on the party filing the appeal. While there is no statutory requirement to retain the services of a licensed expert appraiser, an expert is often necessary to overcome the legal presumption that the assessment is correct, and to establish true value.

5

Under the plain language of N.J.S.A. 54:4-23, and pursuant to N.J. Const. art. VIII, § 1, ¶1(a), the standard of value at which property is assessed is its full and fair value as of October 1 of the pretax year. See Calton Homes v. West Windsor Tp. 15 NJ Tax 231, 242-243 (1995). In a property tax appeal to the Tax Court, the court is seeking to find the true value of the property, specifically, the price a hypothetical willing buyer would pay a hypothetical willing seller on October 1 of the pretax year. See Genola Ventures-Shrewsbury v. Shrewsbury Bor. 2 N.J. Tax 541, 551 (1981).

When appealed from the county board of taxation, the Tax Court must presume the findings of the board to be correct. The burden of proving otherwise falls on the party carrying the appeal to the Tax Court level. An appeal from the judgment of a county board of taxation brings within the jurisdiction of the Tax Court the entire assessment, not just the aspects argued before the county tax board and is a "trial de novo".

N.J.S.A. 2B:13-3b, formerly N.J.S.A. 2A:3A-4b, directs this court to hear and determine all issues of fact and law *de novo*. This contemplates an entire trial to be held as a court of original jurisdiction and not appellate jurisdiction. See Chevron U.S.A., Inc. v. City of Perth Amboy, 9 N.J. Tax 571, 581 (Tax 1988), citing, Black's Law Dictionary 649 (5 ed. 1979).

By its use of the term *de novo* the Legislature intended that this court consider an original assessment completely anew. "[O]n *de novo* review, the Tax Court may

6

determine a true value different from the original assessment, the County Board's assessment, or the taxpayer's valuation." <u>Pantasote Co. v. City of Passaic</u>, 100 N.J. 408, 416, (1985).

In the context of a property tax assessment, the valuation date refers to the specific date on which the value of a property is determined for tax purposes. This date is crucial because it sets the benchmark for assessing the property's taxable value based on known or reasonably knowable information. It serves as a snapshot in time, capturing the state of the real estate market on that specific date. It establishes a consistent and fair basis for determining value based on market conditions, financial data, and legal precedents on that specific date. This leads to more accurate and objective assessments.

Article VIII, Section I of the New Jersey Constitution mandates that all real property be assessed under general laws and uniform rules according to the same standard of value. Without a fixed date, fluctuations in market conditions may cause inconsistent valuations impacting uniformity and equity in taxation.

The trial court in its discretion may allow comparable sales occurring after the date of valuation. While not invalid, comparable sales after the October 1 valuation date should be reasonably close in time and must be adjusted to reflect market conditions as of the valuation date.

Analysis is on a case-by-case basis. Decisions from our courts are sparse and varied. See Rek Inv. Co. v. City of Newark, 80 N.J. Super. 552, 560 (App. Div. 1963) (deciding that a sale of a subject property two months after assessment date is "entitled to great weight"); Samuel Hird & Sons, Inc. v. City of Garfield, 87 N.J. Super. 65, 70-71 (App. Div. 1965) (concluding that a sale eight and a half months after the assessing date may be considered); Almax Builders, Inc. v. City of Perth Amboy, 1 N.J. Tax 31, 37 (Tax 1980) (deciding that a sale seven months after assessing date is "admitted for its rational probative valuation inference"); Glen Wall Assocs. v. Twp. of Wall, 99 N.J. 265, 283 (1985) (holding a sale less than three months after the assessment date is an indicator of value). Newport Center v. City of Jersey City, 17 NJ Tax 405, 427 (deciding that a sale within two years after assessing date is not too remote).

Caution however is to be exercised. "The greater the time gap between the assessing date and the sale date, the more likely that meaningful changes in market conditions have occurred." Newport Center at 427. In Glen Wall Assoc the Supreme Court noted that, in using comparable sales "[t]he benefit of the comparison is lost if the effects of time have altered the factors which result in a determination of value." Id. at 283.

<u>Defendant's opposition to Plaintiff's use of Comparable Sales.</u>

The two sales that defendant wishes to exclude at trial occurred on December 15, 2020, and January 28, 2021. These sales notably occurred after the County Board hearing on November 5, 2020, and consequently were factually too remote for the original appeal.

In considering the issue of remoteness, the court is mindful of the period in question. The court takes judicial notice of the pandemic that began in March 2020, disrupting both the residential and commercial real estate markets as the result of a new and forced perspective on available space, location preference, and functional needs. Although not addressed in the parties' briefs, the court finds this factually compelling.

Accordingly, the court finds the sales in question at 14 and 15 months after the valuation date, and 9 months into the pandemic, too remote in time to be probative of market value as of the October 1, 2019 assessment date. Defendant's motion on this issue is granted.

<u>Defendant's opposition to Plaintiff's use of remediation and demolition cost estimates.</u>

As to evidence regarding remediation and demolition cost estimates and asbestos tables, defendant seeks to bar at trial data used by taxpayer's expert derived from (a) a March 5, 2020 proposal by Phoenix Equipment Corp. estimating the cost

9

to demolish and abate the asbestos present at the buildings (b) February 11, 2020 asbestos inventory tables quantifying the asbestos present; and (c) a 2020 remediation cost estimate table submitted to the New Jersey Department of Environmental Protection in connection with an annual remediation Cost Review/Estimate report regarding ongoing contamination remediation. (July 27, 2020 AECOM LSRP report).

There is no dispute that as of the valuation date, the premises had been vacant and non-operational since 2016. The environmental damage referenced in the documents sought to be excluded existed on the valuation date and constituted a valid factor in the property's true market value. The court is unpersuaded that the compiling of these documents after the valuation date renders such documents inadmissible. The environmental conditions in existence on October 1, 2019 valuation date would have been a factor to be considered by the assessor in determining the assessment. Additionally, any arm's length transaction between a buyer and seller would have contemplated an analysis of environmental damage, remediation expenses, and demolition costs when negotiating and determining market value. As these were not conditions created or discovered after the October 1, 2019 assessment date, the documents developed to calculate the cost of clean-up are probative evidence relative to true value. As such the court denies the defendants motion as to this issue.