HARBORSIDE WAREHOUSE COMPANY, INC., A CORPORATION, PROSECUTOR, v. THE CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, AND THE STATE BOARD OF TAX APPEALS, OF THE STATE OF NEW JERSEY, AND OTHERS, DEFENDANTS.

Submitted January 20, 1942—Decided March 31, 1942.

Before Justices BODINE, PERSKIE and PORTER.

For the prosecutor, *Wall, Haight, Carey & Hartpence* (*John A. Hartpence,* of counsel).

For the defendant City of Jersey City, *Charles A. Rooney* (*Frank P. McCarthy,* of counsel; *John F. Lynch, Jr.,* on the brief).

The opinion of the court was delivered by

PORTER, J. The City of Jersey City assessed taxes on property of the prosecutor for the years 1935, 1936, 1937 and 1938. Appeals to the County Board resulted in reduction and appeals to the State Board resulted in increases. The prosecutor obtained these writs of *certiorari* (to be considered together by consent) to review these determinations.

The property in question is a large warehouse. It's erection was commenced in 1929. It is on lands owned by the Pennsylvania Railroad Company. The operating company failed and the building was sold at a bankruptcy sale to the prosecutor for $2,100,000. The stock of the prosecutor is owned by a subsidiary company of the Pennsylvania Railroad Company. This building was substantially completed in 1931, about $240,000 being spent in completing and improving it from 1931 to 1934. The agreement between the Pennsylvania Railroad Company and the original operating company provided for the kind of building to be erected, and the cost which was to approximate $6,756,000 and for a bond issue to be delivered to the Pennsylvania Railroad Company for $7,000,000.

The tax assessment for 1931 was on the basis of construction cost. For the years 1932, 1933 it was $5,137,000 reduced by the County and State Boards to $3,000,000, 1934 the assessment was $3,000,000. The assessments for 1935, 1936, 1937 and 1938 were $5,137,000 reduced by the County Board to $3,000,000, however increased by the State Board to $5,000,000.

The testimony of three witnesses on behalf of the prosecutor is that the value is $3,000,000 and $3,160,000 while that of the two witnesses for the defendants ranged from about $6,000,000 to $7,000,000. The witnesses for the prosecutor based their estimates on general conditions of the warehouse business while those for the defendants figured the value on the cubic contents and by replacement value making allowances for depreciation and obsolescence. The prosecutor carried the building on its books for the periods in question at figures in excess of $7,000,000. The value of the land is not involved.

We conclude that a factual question was presented and that there were proofs which justify the findings of the State Board. There is a presumption in favor of the correctness of the assessments and the burden of proving that they were excessive is on the owner. *Colonial Life Insurance Co.* v. *State Board of Tax Appeals,* 126 *N. J. L.* 126.

The prosecutor contends that under *N. J. S. A.* 54:4-23 the criterion of true value is determined by the selling price. In *Universal Insurance Co.* v. *State Board of Tax Appeals,* 118 *N. J. L.* 538, the correct rule was reiterated by Mr. Justice Perskie (at *p.* 540), as follows:

"The basic weakness of this attack is that prosecutors proceed on the theory that exchange value or market value is the invariable test of true value under all circumstances. This is not so. In the words of our Court of Errors and Appeals in *Newark* v. *Tunis,* 82 *N. J. L.* 461 (opinion by Parker, J.), * * * 'true value is not always to be ascertained by reference to selling price; * * * special circumstances may increase or depress market value without affecting true value or *vice versa.*'"

Under the facts and circumstances of the case at bar we cannot see how any one could say what the market value or selling price was with any degree of accuracy. The building was an unusual one, large and devoted to a special purpose closely connected with and dependent on the railroad and its facilities, and the land and building were separately owned. It seems to us to come within the stated rule and that testi-

mony of its value from considerations other than its selling price were pertinent and evidential.

Another point urged by the prosecutor is that it was denied its constitutional right to due process of law in that members of the State Board personally visited the property and availed themselves of the knowledge thus gained and that it had no opportunity of cross-examination of the board members. We think the contention to be without merit. From the opinion filed by the board it is clearly indicated that the evidence before it was considered together with its own inspection of the property. It is of help to the board to view a property for the purpose of evaluating the testimony given as is true of any fact finding body. Jurors are often sent to view premises where a crime has been committed or where damages resulted in civil cases or in eminent domain cases where the statute makes a view by the jurors mandatory and in no case that we know of has it been decided that they may be cross-examined as to the knowledge or judgment they thus obtained. Moreover, the cases hold that it is a proper function for the board to use its own knowledge and judgment in appraising the taxable value of property. *United New Jersey Railroad and Canal Co.* v. *State Board of Taxes and Assessment,* 100 *N. J. L.* 131; *Long Dock Co.* v. *State Board of Tax Assessors,* 86 *Id.* 592.

The State Board of Assessors under *Pamph. L.* 1888, *ch.* 208, § 16, is given wide power to ascertain facts necessary for the discharge of their duties including the use of their personal knowledge and judgment. *N. J. S. A.* 54:2-2 provides that the State Board shall perform all acts formerly required by law to be performed by the State Board of Taxes and Assessments and the State Board of Tax Appeals relative to the hearing and determination of tax appeals. In *United New Jersey Railroad and Canal Co.* v. *State Board of Taxes and Assessments, supra,* the Court of Errors and Appeals, speaking through Mr. Justice Black (at *p.* 136), approved the use by the board of its "personal knowledge and judgment gained by experience, applying this to the evidence and to the unusual plotting and location of the lands under investigation, in their relation to other lands, the sale price of which

is offered in evidence for comparison and on which the opinion of expert witnesses is based." Obviously to use their personal knowledge and judgment would require them to gain it from a personal examination of the premises.

It follows that the writs will be discharged, with costs.